# PEOPLE OF THE VIRGIN ISLANDS IN THE INTEREST OF K.J.F., a Minor

S. Ct. Crim. No. 2013-0024

Supreme Court of the Virgin Islands

July 5, 2013

KELE C. ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; HODGE, *Designated Justice*.[1]

## OPINION OF THE COURT

### (July 5, 2013)

HODGE, *Chief Justice*. K.J.F., a minor, appeals from a March 9, 2013 Order issued by the Family Division of Superior Court of the Virgin Islands, which directed that he be transferred to the Criminal Division. We reject K.J.F.'s arguments regarding the jurisdiction of the Superior Court, the sufficiency of the evidence as to his age, and the trial court's order committing him to the custody of the Department of Human Services. We decline to reach his Eighth Amendment challenge because it is not yet ripe. For these reasons, we affirm the Transfer Order.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

William Hyde was brutally beaten in the evening hours of November 23, 2012. He lapsed into a coma. He was found in a shower stall at Magen's Bay beach on St. Thomas in the morning of November 24, 2012. (J.A. 132.) He had no identification on his person and his grey Dodge truck was missing. (J.A. 133-34.) On December 17, he was taken off life support and died of his injuries in a hospital in Florida. The cause of death was determined to be blunt force trauma to the head. (J.A. 164.)

The police located Hyde's truck in the Anna's Retreat area of St. Thomas and conducted surveillance in the vicinity of the vehicle. (J.A. 134.) On November 29, 2012, they saw a young male — whom one of the detectives recognized, and who was later identified as K.J.F. — approach the truck. (J.A. 134-35.) K.J.F. noticed the police, and turned around. (J.A. 135.) The next day, he returned to the truck and removed a black box. (J.A. 136.) Later, he came back with the key for the truck and opened it; at that time, he was arrested. (J.A. 136.)

Once K.J.F. was arrested and advised of his rights, he waived his right to remain silent and, in the presence of his parents, he gave the police a

---

[1] Associate Justice Ive Arlington Swan has been recused from this matter. Verne A. Hodge, a retired Presiding Judge of the Superior Court, sits in his place by designation pursuant to 4 V.I.C. § 24(a).

statement. (J.A. 136.) K.J.F. told the police that his classmate, D.B., gave him the keys to the truck. (J.A. 137.) Initially he told the police that he did not know whose truck it was, but he later stated that the truck belonged to Hyde, and that Hyde was the boss of co-defendant N.C. (J.A. 137.) When he was asked if he knew anything about Hyde being attacked, he stated that he did not, and that he and N.C. had been at a party at Sapphire Beach on November 23. (J.A. 139.) The police later confirmed that while N.C. and K.J.F. did attend a party at Sapphire, the party was on November 24, not November 23. (J.A. 139.)

Based on this information, N.C. and D.B. were arrested at their school on December 20, 2012. (J.A. 141-42.) At the time he was arrested, D.B. had two cell phones in his possession, one of which belonged to Hyde. (J.A. 163.) With his mother and aunt present, N.C. gave the police a statement. (J.A. 143.) He told the police that his group of friends — himself, along with J.J.J., J.G., D.B. and K.J.F. — called Hyde and asked him to give them a ride to Magen's Bay beach. (J.A. 143.) He said that he and Hyde were in the area of the stall, talking, while the other minors remained in the truck. (J.A. 166.) Hyde began to touch him inappropriately, according to N.C. (J.A. 143.) N.C. said he became upset and started beating Hyde. (J.A. 143-44.) He punched him with closed fists, and then K.J.F. brought a BB gun from the truck and started beating Hyde with it on his face and his body. (J.A. 143.) N.C. indicated that J.J.J. and J.G. were not involved in the attack. (J.A. 144.) K.J.F. and N.C. put Hyde in the shower stall and they left the beach in Hyde's truck with J.G. and J.J.J. (J.A. 147.)

D.B. also waived his rights in the presence of his mother and provided the police with a statement. (J.A. 149.) He stated that he was with his friends — N.C., J.J.J., J.G. and K.J.F. — near the basketball court in Anna's Retreat. (J.A. 153.) J.J.J. had a BB gun with him and suggested that the group rob someone. (J.A. 154.) D.B. told police that N.C. then suggested, "Let's call my boss, let's kill him because he's old, gay and he [is] ready to die." (J.A. 154.) The minors all agreed, and N.C. called his boss, Hyde. (J.A. 154.) Hyde came to Anna's Retreat. (J.A. 155.) The minors pointed the BB gun at Hyde and forced him out of the truck. (J.A. 155.) They held N.C. around the neck to make it seem that he did not know what was going on and that he was also being held against his will. (J.A. 156.) They got into Hyde's truck. J.G. drove, K.J.F. was in the passenger seat, and J.J.J. held the gun and sat in the middle of the back

seat. (J.A. 156.) D.B. sat in the rear bed of the truck.[2] (J.A. 156.) According to D.B., J.J.J. and J.G. pulled Hyde out of the vehicle, brought him to the shower stall and started beating and kicking him. (J.A. 156.) K.J.F. and N.C. then joined in the attack. (J.A. 157.) In addition to punching and kicking Hyde, D.B. said, they used the BB gun to beat him about his body.[3] (J.A. 157.) D.B. told the police that he did not participate in the attack and remained in the bed of the truck until the others returned. (J.A. 157.) While they were beating Hyde, D.B. said he heard him cry out in pain, "why are you doing this here to me?" (J.A. 158.) After the minors left the beach, they went home, changed, and went out to a nightclub. (J.A. 160.)

On December 11, 2012, the day after the police took D.B. and N.C.'s statements, they arrested J.J.J. (J.A. 160.) He declined to waive his rights and did not provide a statement. (J.A. 159-60.) The following day, J.G. was arrested at his school and he also declined to speak to the police. (J.A. 162.)

The court held an advisement of rights hearing on December 11, 2012, for K.J.F. and all of the other minors except J.G., who had not yet been arrested. At the hearing, the parties were represented by counsel. The People then charged K.J.F., and the other minors, with a number of offenses, the most serious of which was attempted first-degree murder. They also moved to transfer K.J.F. to the Criminal Division to be tried as an adult. After Hyde died on December 17, 2012, the People filed an Amended Complaint on January 18, 2013, charging K.J.F. with first-degree murder. The court scheduled a hearing on the Motion to Transfer on January 25, 2013. All of the minors appeared at the hearing and were accompanied by counsel. At the hearing, case agent Detective Steven Phillip testified about the course of his investigation and relayed the statements provided to the police by the minors. He also testified that his investigation revealed the ages of the defendants. He said K.J.F. was 17, and that he thought D.B. was "around 15. He was 16." (J.A. 165.) He also testified that J.G. was 14 at the time of the attack, N.C. was 17, and J.J.J.

---

[2] A video from security cameras at Magen's Bay confirmed that the truck entered the beach area with someone in the bed of the truck. (J.A. 156.)

[3] A slide of a BB gun — which Detective Phillip described as a piece on the top of newer versions of BB guns which "ra[tchets] back and forth like it's a real gun" — was found on the beach near the shower stall where Hyde's body was discovered. (J.A. 158.)

was 17. (J.A. 166.) When asked how he obtained this information, Detective Phillip testified that he had obtained it from the minors themselves, and from the parents. (J.A. 166.)

Detective Phillip also testified that they discovered a video on K.J.F.'s cell phone, which appeared to be taken from inside a vehicle with a grey interior on November 23, 2012. (J.A. 174.) It showed K.J.F., N.C., and D.B. celebrating after the attack, and some sort of firearm was visible. (J.A. 172.) The People called K.J.F.'s mother who confirmed that he was 17 at the time of the attack. (J.A. 192.)

At the conclusion of the hearing, the court took the matter under advisement and permitted the parties to supplement their arguments in writing. The court reconvened the hearing on February 28, 2013. It stated on the record that it found probable cause and that all of the minors were fourteen or older, but younger than eighteen, at the time of the offense, taking judicial notice of the documents in the court's file. It also ordered the minors to be committed to a Youth Rehabilitation Center on St. Croix. It memorialized these decisions in a Transfer Order issued on March 9, 2013, from which K.J.F. appeals. K.J.F. obtained a stay from the trial court of its March 9, 2013 Transfer Order.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). An order transferring a juvenile from the Family Division to the Criminal Division of the Superior Court is a final, appealable order. 5 V.I.C. § 2508(d); *In re S.T.*, 51 V.I. 420, 422 (V.I. 2009).

The Court reviews the Superior Court's factual findings for clear error and exercises plenary review over the Superior Court's application of the law to those facts. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Where an appellant fails to object to a Superior Court order or decision, we review for plain error. V.I.S.CT.R. 4(h); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011). " 'Because the decision to transfer a juvenile for prosecution as an adult

is committed to the sound discretion of the trial court, we review that decision only for an abuse of discretion.' " *In re S.T.*, 51 V.I. at 422 (quoting *United States v. A.R.*, 38 F.3d 699, 702 (3d Cir. 1994)).

### B. The Effect of *Miller* on the Criminal Division's Authority to Try the Minors

■ K.J.F. argues that the trial court's Transfer Order violates *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In *Miller*, the United States Supreme Court held that statutes which provide for a mandatory sentence of life imprisonment without the possibility of parole violate the Eighth Amendment's prohibition on cruel and unusual punishment when applied to defendants who committed their crimes when they were under the age of eighteen. *Id.* at 2460. In the Virgin Islands, any person who is convicted of first-degree murder must receive a sentence of life imprisonment without the possibility of parole. 14 V.I.C. § 923(a). K.J.F. contends that his transfer to the Criminal Division is impermissible because if he is convicted of first-degree murder, section 923 would impose an unconstitutional mandatory sentence of life imprisonment without the possibility of parole. Because he failed to raise this objection below, we review for plain error.

■ K.J.F. correctly states the *Miller* holding. It is clear that it would violate the Eighth Amendment for the trial court to be required by statute to impose a sentence of life imprisonment without the possibility of parole. *Miller*, 132 S.Ct. at 2475 ("[R]equiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, . . . violate[s] th[e] principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment."). However, this issue is not yet ripe. K.J.F. has not yet been convicted of first-degree murder — indeed, he may never be convicted of it. The parties may reach a plea agreement; the People might voluntarily drop the first-degree murder count; the jury might acquit him of that charge. Furthermore, even if K.J.F. is ultimately convicted and sentenced for first-degree murder, between now and then the Legislature may wisely decide to amend the first-degree murder penalty as it relates to persons who committed the offense while under the age of 18, and may make any such amendments effective as to pending cases.

■■ The uncertainties inherent in this case demonstrate why courts defer deciding issues before they are ripe. Instead, we will address

whether a particular sentence violates *Miller* only after it has been imposed.[4] *See United States v. Rodriguez-Campos*, 169 Fed. Appx. 232, 233 (5th Cir. 2006) (stating that a constitutional challenge to the portion of the appellant's sentence that requires him to cooperate in the taking of a DNA sample during the period of his supervised release was not yet ripe); *United States v. Gunter*, No. 07-CR-20076-8, 2007 U.S. Dist. LEXIS 76189, *3 (E.D. Mich. Oct. 15, 2007) (unpublished) (denying a request to declare unconstitutional the disparity between the sentences for powder cocaine and crack cocaine, because appellant had not yet been convicted and "a potential change in the law is not an actual change in the law meriting immediate consideration"); *United States v. Caro*, No. 1:06-CR-00001, 2006 U.S. Dist. LEXIS 48750, **10-11 (W.D. Va. June 2, 2006) (unpublished) (stating that, because the appellant had not yet been convicted, let alone sentenced, "any challenge to the constitutionality of a possible sentence that might be imposed in the future simply is not ripe"). At this time, K.J.F. has only appealed the Transfer Order. That order — as discussed below — satisfies the statutory requirements, as the trial court found that K.J.F. was 14 or older, but less than 18, at the time of the attack, and that there was probable cause that he committed the charged offenses. Nothing in *Miller* suggests that a court that finds that there is probable cause that a minor committed first-degree murder cannot bind that minor over to the Criminal Division for trial.[5] Consequently, we decline to address K.J.F.'s *Miller* challenge at this time.[6]

---

[4] At that time, the Court will have the benefit of briefing by the parties, and will consider the possible remedies if a *Miller* violation has occurred.

[5] It is noteworthy that if K.J.F. eventually is convicted of, or pleads guilty to, something *less* than first-degree murder, the Criminal Division would not lose jurisdiction. 5 V.I.C. § 2508(e) ("[O]nce such a child has been transferred from the Family Division to a court of competent jurisdiction, that court shall retain jurisdiction over the case, even though the child pleads guilty to, or is convicted of a lesser included offense; and a plea to or conviction of a lesser included offense shall not revest the Family Division with jurisdiction over such a child.") This suggests that the Legislature intended the courts to consider the facts and charges as they exist at the time of the transfer hearing, rather than hypothesizing about what might happen in the future, supporting the conclusion that there is no error in transferring a defendant to the Criminal Division based on a first-degree murder charge, even if the court may not be required to impose a mandatory punishment for first-degree murder if a minor is convicted on that charge.

[6] In the territorial courts, ripeness, like standing, is a judicially created justiciability doctrine which, although not jurisdictional, is nonetheless applied by this Court to ensure that only

## C. Jurisdiction over the Offense

K.J.F. also argues that the court lacked territorial jurisdiction over the murder charges because Hyde died in Florida and not in the Virgin Islands. As discussed in Section I, *supra*, Hyde was beaten and left to die on a beach on St. Thomas in the United States Virgin Islands. He was transported for further medical care to a hospital in Florida, where he ultimately died of his injuries. K.J.F. contends that there is no authority for prosecuting an individual for an act that leads to a death where the act occurred in the Territory but the death took place outside the Territory. Because he did not raise this objection below, we review for plain error. *Phipps*, 54 V.I. at 546.

K.J.F.'s argument centers on section 83 of title 14 of the Virgin Islands Code. That provision states:

§ 83 Place of commission of murder or manslaughter

> When the crime of murder or manslaughter has been committed by means of a mortal wound given, or injury inflicted, or poison administered without the Virgin Islands, and the person so wounded, injured, or poisoned dies thereof within the Virgin Islands, the person committing such crime is liable to punishment therefor in the Virgin Islands, and in such case the action therefor may be commenced and tried in the Virgin Islands.

14 V.I.C. § 83.

K.J.F. contends that the statute's silence regarding injuries committed within the Territory, resulting in deaths outside the Territory, demonstrates the Legislature's intent not to prosecute such crimes in the Virgin Islands. His argument is unavailing. Section 81 of title 14 makes clear that "[t]he punishment prescribed by [title 14] shall apply to whoever (1) commits, in whole or in part, any offense within the Virgin Islands . . . ."

■ K.J.F. acknowledged section 81 in response to the People's brief. However, he contends that sections 83 and 81 permit "*punishment*" when the offense is partly committed in the Virgin Islands, and that these statutes do not authorize *prosecution* in those circumstances. (Appellant's

---

concrete cases and controversies present themselves for adjudication. *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 423 n.4 (V.I. May 2, 2013) (noting that standing is not a jurisdictional requirement in the Virgin Islands courts).

Reply Br. 8-9.) His argument is contradicted by the express language of section 83, which confirms that "the *action* therefor may be commenced and tried in the Virgin Islands." 14 V.I.C. § 83 (emphasis added). Consequently, we conclude that K.J.F.'s interpretation is erroneous and that section 81 permits the prosecution and punishment of any person who commits any offense in whole or in part in the Virgin Islands.

The People allege that K.J.F. committed the offenses of first- and second-degree murder in part in the Virgin Islands, when he and his companions assaulted Hyde on a beach in St. Thomas with the intent to kill him. Because the offense was committed in part in the Virgin Islands, the trial court has jurisdiction over the offense pursuant to section 81 of title 14, and K.J.F.'s contention to the contrary is rejected.

## D. Failure to Prove Birth Date

K.J.F. argues that the People failed to prove that he was age 14 years or older, but less than 18, at the time of the offense and, therefore, amenable to transfer to the Criminal Division, pursuant to 5 V.I.C. § 2508(b). K.J.F. did not raise this objection below and we therefore review for plain error. *Phipps*, 54 V.I. at 546.

█ This argument is entirely without merit. The People called K.J.F.'s mother as a witness and she testified as to K.J.F.'s birthdate, indicating that he was 17 years old at the time of the offense and, therefore, amenable to transfer. (J.A. 192.) K.J.F. additionally asserts that, "the People, not K.J.F.'s mother . . . must prove that he [was] age 14 or above." (Appellant's Br. 27.) It appears that K.J.F. is arguing that the People must not use the testimony of a parent to prove age and instead may rely only on documentary evidence, such as a "birth certificate, passport, or a baptismal certificate." The only authority he cites for this proposition is 8 C.F.R. § 103.2(b)(2)(i) (2012), a federal regulation that governs the procedure by which immigrants may apply for benefits, and which permits secondary evidence to substitute for direct evidence — such as birth certificates — to prove eligibility for the benefits. Needless to say, this regulation is wholly inapplicable to the matter before this Court. K.J.F. bears the burden of demonstrating plain error and he has presented no authority for the proposition that a defendant's age — like all other elements or factors required to be proved in a judicial proceeding — may not be established through the testimony of witnesses with personal knowledge. *See* FED. R. EVID. 601, 602. For this reason, we

reject K.J.F.'s challenge to the sufficiency of the evidence regarding the proof of his age.

### E. Custody Placement

K.J.F. challenges the validity of the trial court's Transfer Order in part because it committed K.J.F. to the custody of the Commissioner of Department of Human Services (DHS), to be held at the Youth Rehabilitation Center (YRC) in St. Croix. Section 2509(g) of title 5 states in relevant part:

> If the Attorney General's motion for transfer *pursuant to section 2508(d)* of this chapter is granted, and the child offender has been detained or is subsequently detained, the child offender *shall be placed in the custody of the Bureau of Corrections*. Such pre-trial detention of the child offender shall be separate and apart from the adult inmate population.

5 V.I.C. § 2509(g) (emphases added).

Upon granting the Motion to Transfer, the Family Division ordered that K.J.F. be "**COMMITTED** to the custody the Commissioner of the Department of Human Services to be placed at the Youth Rehabilitation Center pending a detention hearing to be scheduled by the Criminal Division of this Court." (J.A. 18.) K.J.F. argues that the order violates section 2509(g) because it committed him to the custody of the Department of Human Services, rather than the Bureau of Corrections.

#### 1. *The Applicability of Section 2509(g)*

As K.J.F. notes in his brief, he was transferred pursuant to the mandatory transfer provisions of section 2508(b)(4), not the permissive transfer provisions in 2508(d). (Appellant's Br. 20.) Consequently, as an initial matter, it is not entirely clear that section 2509(g) would apply, as it is textually limited to circumstances in which the Attorney General files a motion to transfer pursuant to section 2508(d). 5 V.I.C. § 2509(g) (referencing section 2508(d) but not 2508(b)(4)). In fact, the mandatory transfer provision in 2508(b)(4) was added to the section in 1994. When the Legislature added the provision of 2509(g) that requires that minors detained pursuant to 2508(d) be held by the Bureau of Corrections (BOC), section 2508(b)(4) had been in existence for three years, yet the

Legislature did not include section 2508(b)(4) in specifying who must be detained by the BOC upon transfer. 5 V.I.C. § 2509(g). Consequently, it could be argued that when the Legislature enacted 2509(g), it intended to omit minors transferred mandatorily under section 2508(b)(4). Nonetheless, it would be incomprehensible for the Legislature to require that minors who *may* be transferred *must* be detained by the BOC, while minors who *must* be transferred could remain in non-BOC detention.

 This Court has relied on the statutory language in section 2508(d) that a transfer order "is a final appealable order" to establish jurisdiction. *See In re J.S.I.*, 55 V.I. 939, 942 (V.I. 2011) (finding jurisdiction over an interlocutory appeal in a mandatory transfer case); *In re J.P.*, 54 V.I. 580, 583 (V.I. 2011); *In re S.T.*, 51 V.I. at 422 (same). However, this language appears not in the mandatory-transfer section 2508(b) — which is the section implicated in the above-cited cases — but in the permissive-transfer section 2508(d). Nonetheless, we have "borrowed" this part of section 2508(d) and applied it to mandatory transfers. Likewise, we construe section 2509(g) as applying to mandatory transfers under 2508(b), just as it applies to permissive transfers under 2508(d), because to do otherwise would — as discussed above — lead to absurd results. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *Disabled in Action of Penn. v. Southeastern Penn. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) ("We also consider the overall object and policy of the statute . . . and avoid constructions that produce odd or absurd results or that are inconsistent with common sense.") (internal quotation marks omitted); *see also Gilbert v. People*, 52 V.I. 350, 365 (V.I. 2009) (rejecting an interpretation of a Virgin Islands statute that "would lead to unjust and absurd results" because such an interpretation would be "clearly inconsistent with the Legislature's intent").

### 2. *Custody Placement*

Because section 2509(g) applies, the trial court was mandated to place the minors in the custody of the BOC. However, the trial court expressed concern about that potential arrangement, stating that it was "not convinced that the minors can be properly housed at the Bureau of Corrections." (J.A. 283.) Presumably the court doubted that the Bureau of

Corrections had the facilities to maintain the minors "separate and apart from the adult inmate population" while they awaited trial, as required by 5 V.I.C. § 2509(g). The court did not make an actual finding regarding the BOC facilities and took no testimony or other evidence on the question.[7] However, this is of no moment, because the parties do not contest the court's suggestion that the BOC is not fit to take custody of the minors separately from adult inmates.

██ Nevertheless, the plain language of the statute requires that transferred minors be remanded to the custody of the Bureau of Corrections upon transfer, and not the Department of Human Services' Youth Rehabilitation Center. Consequently, in transferring K.J.F. to the YRC, the trial court clearly erred.

However, K.J.F. does not begin to suggest how he might have been prejudiced by the fact that he was within the custody of the Department of Human Services rather the Bureau of Corrections. Indeed, detention in a Youth Rehabilitation Center is more likely to give a minor the "care [and] protection [that] will best enhance [his] welfare," as demanded by the Children's Policy of the Territory. 5 V.I.C. § 2501(g); *see also* 5 V.I.C. § 2501(h) (stating that all the laws in the chapter — which would include section 2509(g) — be "liberally construed to carry out the intent and purpose of the Children's Policy"). Without a showing of prejudice, this Court will not reverse a trial court's decision. V.I.S.CT.R. 4(i). For these reasons, although we conclude that the trial court erred in remanding K.J.F. to the Youth Rehabilitation Center, we find the error to be harmless.[8]

## III. CONCLUSION

The trial court correctly accepted the evidence of K.J.F.'s age as it was testified to by his mother. Although the court erred when it failed to

---

[7] Section 175 of title 4 requires that "Family Division judges shall visit, at least annually, the juvenile pre-trial detention facilities, shelter care facilities, and any other facility providing services to a juvenile as a dispositional alternative.") It is not clear whether the newly appointed judge presiding below had visited the Bureau of Corrections or any other facility that detains juveniles pending trial within the year.

[8] Since we find that K.J.F. is amenable to transfer, the matter may soon be mooted when he is arraigned before the Criminal Division. For example, K.J.F.'s co-defendant, J.G., was transferred and, at his arraignment, was released on bail, conditioned upon his home confinement with electronic monitoring.

remand K.J.F. to the custody of the Bureau of Corrections, such error was harmless. The court also correctly exercised jurisdiction over the case because K.J.F. committed the offense in part in the Virgin Islands. As to K.J.F.'s Eighth Amendment challenge to his potential sentence, it is not ripe. For these reasons, we affirm the March 9, 2013 Transfer Order.