# VIRGIN ISLANDS NARCOTICS STRIKE FORCE,
## Appellant/Respondent
### v.
# GOVERNMENT OF THE VIRGIN ISLANDS PUBLIC EMPLOYEES RELATIONS BOARD, Appellee/Petitioner

S. Ct. Civil No. 2012-0038

Supreme Court of the Virgin Islands

December 2, 2013

ROBERT A. MOLLOY, ESQ., Assistant Attorney General, St. Croix, USVI, *Attorney for Appellant.*[1]

---

[1] Although Robert A. Molloy, Esq., drafted Appellant's Brief and participated in oral argument in this matter, this Court, in an October 2, 2013 Order, granted his motion to withdraw as counsel because he could no longer continue his representation in light of his confirmation to serve as a Superior Court judge. After Molloy received permission to withdraw, Joss N. Springette, Esq., entered an appearance on behalf of the NSF.

LARRY RAYMOND-ROY, ESQ., St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 2, 2013)

CABRET, *Associate Justice*. The Virgin Islands Narcotics Strike Force ("NSF") appeals the Superior Court's March 23, 2012 Opinion and Order, which directed it to pay pre- and post-judgment interest to Jay Watson. For the following reasons, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter originated on May 28, 1992, when the NSF terminated Watson from his position as an NSF agent, effective June 16, 1992, for poor performance during his probationary period. On June 12, 1992, Watson appealed his termination to the Public Employees Relations Board ("PERB")[2] pursuant to section 531(b) of title 3 of the Virgin Islands Code, which grants the PERB jurisdiction to hear appeals of hiring decisions made in violation of the Personnel Merit System. In his appeal, Watson contended that the NSF discriminated against him and terminated him based on nonmerit factors within the meaning of section 531(b). On March 2, 1994, the PERB issued a decision reinstating Watson, but without back pay. The NSF and Watson both filed petitions for writ of review of that decision with the Superior Court, which were respectively docketed as Super. Ct. Civ. Nos. 333/1994 (STX) and 337/1994 (STX). On November 27, 2000, the Superior Court affirmed the decision to reinstate Watson, but found that the PERB abused its discretion when it refused to award him back pay, and remanded the matter to the PERB for further proceedings.

For reasons not clear from the record, the matter languished for several years, until the PERB issued an April 26, 2006 Order awarding back pay

---

[2] At the time Watson filed his initial appeal, the agency now known as the PERB was known as the Government Employees Service Commission, *see* Act No. 6010, § 1(d) (V.I. Reg. Sess. 1994), and the Superior Court had been known as the Territorial Court, *see* Act No. 6687, § 1(b) (V.I. Reg. Sess. 2004). For convenience, we refer to both entities under their current names.

— without specifying an exact sum due — and directing the NSF to file a report every sixty days detailing the steps taken to comply with its decision. The NSF, however, failed to take any action in response to the PERB's April 26, 2006 Order. Therefore, on July 31, 2007, the PERB filed with the Superior Court a document captioned "Motion to Enforce Order," which the Superior Court docketed as Super. Ct. Civ. No. 380/2007 (STX). In its motion — which it stated that it brought pursuant to section 379(b) of title 24 of the Virgin Islands Code — the PERB stated that it entered the April 26, 2006 Order in conformity with the November 27, 2000 Opinion, and requested that the Superior Court enter an order directing the NSF to comply. Although the NSF had not yet filed a response to the PERB's filing, the Superior Court, in a September 26, 2007 Order,[3] granted the motion.

Subsequently, Watson mailed a *pro se* letter directly to the Superior Court judge assigned to Super. Ct. Civ. No. 380/2007 (STX), which the Clerk of the Superior Court received on June 27, 2008. In his letter, Watson stated that he was aware that the Superior Court had issued the September 26, 2007 Order, but noted that he had still not received any back pay from the NSF. Moreover, Watson demanded that the Superior Court direct the NSF to pay him pre-judgment interest from the date of his termination to the date the PERB issued its March 2, 1994 Order, and that he also receive post-judgment interest. Additionally, Watson requested that the Superior Court sanction the NSF for its non-compliance with the September 26, 2007 Order.

In an August 28, 2008 Order, the Superior Court directed the NSF to respond to Watson's letter. On September 4, 2008, the NSF filed a motion to dismiss, which alleged that the PERB had never served the NSF with its July 31, 2007 motion. Shortly thereafter on September 11, 2008, the NSF paid Watson $38,577.29, representing the amount of back pay owed, without interest. The Superior Court, in a November 20, 2008 Order, agreed that the PERB was required to serve the NSF in accordance with

---

[3] Although signed by the Superior Court judge on September 25, 2007, the Clerk of the Superior Court did not enter the order until September 26, 2007. *See* V.I.S.CT.R. 5(a)(9) ("A judgment or order is entered within the meaning of this Rule when it is entered in the docket in compliance with Superior Court Rule 49.").

Federal Rule of Civil Procedure 4[4] because it filed its motion as the initiating document for a new case, and therefore vacated the September 26, 2007 Order because it had never acquired personal jurisdiction over the NSF. Nevertheless, the Superior Court found that "[s]ince Watson and PERB have submitted themselves to the [Superior] Court's jurisdiction, [it] will remand the instant case to PERB for a determination on Watson's request for interest on his back pay award."[5] (J.A. 77.)

On remand, the PERB, in an order dated September 11, 2009, but not mailed to Watson until September 14, 2009, held that it "does not have authority to award interest on back pay awards in the context of an unfair labor practice," but "that interest may accrue from the date the [Superior] Court affirms the PERB's order." (J.A. 80.) More than four months later, on January 12, 2010, Watson filed a *pro se* motion with the Superior Court, in the proceeding docketed as Super. Ct. Civ. No. 380/2007 (STX), alleging that the PERB erred when it denied his request. Due to the death of the judge who entered the prior orders in the matter, the Clerk of the Superior Court assigned the case to a different judge. On February 9, 2010,·the NSF filed a motion to dismiss, alleging that Watson had effectively filed an untimely petition for writ of review of the September 11, 2009 Order. On the same day, the NSF also filed a motion to strike Watson's motion on the grounds that he was not a party to Super. Ct. Civ. No. 380/2007 (STX) and had never been granted permission to intervene. On March 19, 2010, the PERB joined the NSF in requesting that the Superior Court dismiss Watson's motion for lack of jurisdiction. The Superior Court held oral arguments on March 26, 2010, and gave the NSF the opportunity to file a supplemental brief, which it filed on April 23, 2010.

In a March 23, 2012 Opinion, the Superior Court denied the motions filed by the NSF and the PERB and granted Watson's motion. First, the Superior Court found — notwithstanding the conclusion of the prior

---

[4] *See* SUPER. CT. R. 27(b) ("[t]he summons and process shall be served in the same manner as required to be served by Rule 4 of the Federal Rules of Civil Procedure").

[5] The NSF appealed the November 20, 2008 Order on December 29, 2008, which this Court docketed as S. Ct. Civ. No. 2009-0004. However, on July 1, 2009, the NSF and the PERB jointly filed a stipulation for voluntary dismissal pursuant to Supreme Court Rule 33. In a July 20, 2009 Order, this Court approved the stipulation and dismissed the appeal. *See V.I. Narcotics Strike Force v. Pub. Emp. Relations Bd.*, S. Ct. Civ. No. 2009-0004, slip op. at 1 (V.I. July 20, 2009).

judge in the November 20, 2008 Order — that the NSF had waived its claim that service of process had been defective, since it "continuously appeared to defend its legal interests in this case based upon the merits." (J.A. 104.) Additionally, the Superior Court found that it possessed subject matter jurisdiction over the matter by virtue of section 379(b) of title 24, held that Watson had standing to intervene, and concluded that the November 20, 2008 Order "had already deemed Watsons' letter . . . [to be] a motion for intervention and granted Watson the right to intervene." (J.A. 105.) Furthermore, the Superior Court rejected the argument that Watson's motion was effectively an untimely petition for writ of review because "Watson is not requesting the Court to review and reverse the PERB's September 11, 2009 Order," but was instead "request[ing] for this Court to decide the issue of his entitlement to interest on the back pay award as a matter of law on the merits based upon this Court's inherent powers to grant interest on judgments." (J.A. 106.) According to the Superior Court, "[t]he Court's jurisdiction to decide Watson's claims for pre and post judgment interest on his back pay awarded by this Court's November 27, 2000 Judgment Order derives from [4] V.I.C. § 76, which grants the Superior Court original jurisdiction over all civil actions regardless of the amount in controversy." (J.A. 106-07.) Thus, "although the [Superior] Court had remanded the issue for the PERB to determine based upon its own statutory authority . . . Watson could still pursue his claims for interest on his back pay judgment award directly from the Court based upon the Court's original jurisdiction to do so." (J.A. 107.)

After resolving these threshold questions, the Superior Court reviewed the merits of Watson's claim for interest, and concluded that he was entitled to pre-judgment interest at a nine percent rate "from the date of his reinstatement with the VINSF until the Court's November 27, 2000 Order," and post-judgment interest at a four percent rate "from . . . November 27, 2000 . . . until the date the award [of back pay] was [finally] paid . . . on September 11, 2008." (J.A. 113.) The NSF timely filed its notice of appeal on May 2, 2012. *See* V.I.S.Ct.R. 5(a)(1) ("[I]f the Government of the Virgin Islands . . . or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry.").

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as

otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's March 23, 2012 Opinion and Order constitutes a final judgment, this Court has jurisdiction over this appeal. In addition, for reasons explained in more detail below, this Court also has jurisdiction by virtue of section 530a of title 3. *See* 3 V.I.C. § 530a ("The [Supreme] Court of the Virgin Islands shall have appellate jurisdiction of any decision of the Superior Court made pursuant to this chapter, unless otherwise provided by law.").[6]

## III. DISCUSSION

In their appellate briefs, both the NSF and the PERB argue, on numerous grounds, that the Superior Court was precluded from granting Watson's request for pre- and post-judgment interest. Specifically, the NSF and the PERB contend that Watson effectively filed an untimely petition for writ of review of the PERB's September 11, 2009 Order. In addition, the NSF alone argues that the Superior Court never acquired jurisdiction because the PERB lacked standing to file its July 31, 2007 motion, since section 530 of title 3, and not section 379 of title 24, governed this matter.

These two questions involve pure questions of law over which this Court exercises plenary review. *See Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008). Although the NSF and the PERB both agree that the Superior Court erred in issuing its March 23, 2012 Opinion and Order, it is well established that parties may not explicitly or implicitly stipulate to the law, "especially in an unsettled and everchanging area" where a decision by this Court "may unfairly and unjustifiably affect the disposition of other cases," *Garcia v. Garcia*, 59 V.I. 758, 774 (V.I. 2013) (quoting *Murrell v. People*, 54 V.I. 338, 348 (V.I. 2010)), and thus we must independently determine whether the

---

[6] Although this section provides that the "District Court . . . shall have appellate jurisdiction," the Legislature granted the Supreme Court jurisdiction over all appeals from the Superior Court in 2004, which took effect on January 29, 2007. 4 V.I.C. § 32; *Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009) ("The Supreme Court officially assumed appellate jurisdiction over appeals from the Superior Court on January 29, 2007."); *see also* Act No. 6687 (V.I. Reg. Sess. 2004) (creating the Supreme Court of the Virgin Islands, approved October 19, 2004). And therefore, all references in the Virgin Islands Code to the District Court's appellate jurisdiction enacted before 2004 have been implicitly repealed. *See Gov't of the V.I. v. Crooke*, 54 V.I. 237, 246-47 (V.I. 2010); *In re Rogers*, 57 V.I. 553, 558 n.1 (V.I. 2012).

Superior Court committed error in this regard. Since the NSF's claim that the Superior Court lacked jurisdiction to adjudicate the PERB's July 31, 2007 motion would provide it with greater relief — in that, if true, this Court would set aside all orders in the litigation, rather than only the March 23, 2012 Opinion and Order — we begin by considering that claim.

### A. PERB's Authority to Bring an Enforcement Action

In its July 31, 2007 motion, the PERB invoked section 379(b) of title 24 as the sole legal authority for bringing its enforcement action. The NSF, however, correctly notes in its appellate brief that section 379(b) only states that "[t]he PERB may request the Superior Court of the Virgin Islands to enforce any order issued pursuant to its powers under *this chapter.*" 24 V.I.C. § 379(b) (emphasis added). Section 379(b) is located in chapter 14 of title 24, which is titled "Public Employee Labor Relations" and confers upon the PERB the power to adjudicate unfair labor practices, certify and de-certify collective bargaining units and their exclusive representatives, mediate labor disputes between the government and exclusive representatives, and to otherwise administer the collective bargaining system as it relates to government employees. In contrast, every action taken by the PERB in this case stemmed from its powers to administer the Personnel Merit System; specifically, its authority to hear appeals alleging that hiring decisions were made based on nonmerit factors. *See* 3 V.I.C. § 531(b). According to the NSF, section 530a of title 3 delineates the PERB's powers in such cases, and since that statute — unlike section 379(b) of title 24 — does not provide that the PERB may request that the Superior Court enforce any order, but instead limits the Superior Court to reviewing petitions filed by parties aggrieved by a final order of the PERB, the Superior Court lacked jurisdiction to entertain the July 31, 2007 motion. The PERB, for inexplicable reasons, does not respond to this argument in its appellate brief.

 We agree with the NSF that section 379(b) of title 24 is wholly inapplicable to this case. However, we disagree that the absence of any explicit language in section 530a of title 3 granting the PERB the authority to initiate an enforcement action is of any jurisdictional significance. Section 76 of title 4, which delineates the scope of the Superior Court's jurisdiction, provides that "the Superior Court shall have original jurisdiction in all civil actions regardless of the amount in

controversy." 4 V.I.C. § 76(a). While not defined in section 76, "civil actions" are "suits of a civil nature whether cognizable as cases at law or in equity." *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013) (quoting 5 V.I.C. § 1). The PERB's July 31, 2007 motion, which requested that the Superior Court compel the NSF to comply with its earlier order, clearly constituted a civil action. And although the NSF contends that the PERB lacks standing to bring an enforcement action in the Personnel Merit System context, it is well established that "neither this Court nor the Superior Court are Article III courts," and that therefore "standing[] is . . . not jurisdictional." *Simon v. Joseph*, 59 V.I. 611, 629-630 (V.I. 2013) (quoting *In re K.J.F.*, 59 V.I. 333, 340 n.6 (V.I. 2013)). Thus, by failing to raise the standing issue until this appeal, the NSF has waived its argument. *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564-65 (V.I. 2012).

 Even if we were to assume that the PERB, by failing to even acknowledge — let alone respond to — the NSF's standing argument in its appellate brief, has "waived waiver," *see Simpson v. Golden*, 56 V.I. 272, 281 n.6 (V.I. 2012), we nevertheless conclude that the Legislature did not intend to preclude the PERB from seeking judicial enforcement of orders entered pursuant to its title 3 jurisdiction. "[S]tatutes granting power to administrative agencies are strictly construed as conferring only those powers granted expressly *or by necessary implication*." *Walker v. Luther*, 830 F.2d 1208, 1211 (2d Cir. 1987) (citing 3 NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 65.02 (Sands 4th ed. 1986)) (emphasis added). Unquestionably, when the Legislature vests an administrative agency with a regulatory function, it grants the agency the implicit authority to seek judicial enforcement of its decisions. *See, e.g., Commonwealth v. Beam*, 567 Pa. 492, 788 A.2d 357, 359 (2002) (holding that the Pennsylvania Department of Transportation, having been vested with authority to license airports, has the implied authority to initiate an action for injunction or other judicial redress to restrain the operation of an unlicensed airport); *City of New York v. City Civil Service Comm'n*, 60 N.Y.2d 436, 458 N.E.2d 354, 358, 470 N.Y.S.2d 113 (1983) (holding that a city civil service commission has the inherent authority to seek injunctive or other incidental relief when a city agency violates the merit system law); *Racine Fire & Police Comm'n v. Stanfield*, 70 Wis. 2d 395, 234 N.W.2d 307, 309 (1975) (conferring power or duty upon an administrative agency necessarily confers the additional power to

maintain or defend an action arising out of the exercise of that power or duty). Thus, the Legislature, by conferring the PERB with authority to review dismissals, demotions, and suspensions of regular employees — including the power to conduct hearings and order remedies such as reinstatement, back pay, and attorney's fees — necessarily also vested it with the power to seek judicial enforcement of its decisions; to hold otherwise would allow a government agency to simply ignore an adverse PERB decision without penalty, thus undermining the entire regulatory regime established in chapter 25 of title 3.[7] Accordingly, the Superior Court committed no error when it failed to *sua sponte* dismiss the PERB's July 31, 2007 motion.

## B. Watson's *Pro Se* Motion

■ Having concluded that the PERB's July 31, 2007 motion was properly before the Superior Court, we now consider the parties' joint claim that the Superior Court erred when it failed to treat Watson's *pro se* motion as a petition for writ of review. As explained above, we agree that section 530a of title 3 governs this dispute. Section 530a establishes a clear procedure through which a party dissatisfied with a final order rendered by the PERB by virtue of its jurisdiction to administer the Personnel Merit System may obtain judicial review of the decision:

---

[7] As the NSF correctly observes, section 530a of title 3 only authorizes "[a] party aggrieved by any final order of the PERB" to "appeal to the Superior Court of the Virgin Islands." 3 V.I.C. § 530a(a). In this case, the PERB was clearly neither a party to the dispute between the NSF and Watson, nor was it aggrieved by its own order. And even if we were to assume that the PERB's April 26, 2006 Order was a "final" order notwithstanding its failure to quantify the back pay award, *see Gov't of the V.I. v. UIW-SIU*, 57 V.I. 649, 654-55 (V.I. 2012), since the PERB ruled in Watson's favor by directing the NSF to provide him with back pay, Watson was clearly not "aggrieved" by that order, and thus could not file a petition for writ of review with the Superior Court. Therefore, were this Court to accept the NSF's invitation to hold that the PERB cannot seek judicial enforcement of an order absent explicit statutory authorization, we would, in effect, provide the NSF and other agencies with a *de facto* veto of any adverse decision. *See Gilbert v. People*, 52 V.I. 350, 365 (V.I. 2009) (rejecting an interpretation of a Virgin Islands statute that "would lead to unjust and absurd results" because such an interpretation would be "clearly inconsistent with the Legislature's intent"); *see also Disabled in Action of Penn. v. Southeastern Penn. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (the "overall object and policy of the statute" are to be considered, while "avoid[ing] constructions that produce odd or absurd results or that are inconsistent with common sense" (internal quotation marks omitted)).

(a) Any party aggrieved by any final order of the PERB issued under section 530 or 531 of this chapter, may appeal to the Superior Court of the Virgin Islands. *An application for review must be filed within 30 days after the date of the Final Order* and name the PERB as a party respondent. The rules of procedure of the Superior Court regarding a writ of Review shall govern the appeal proceeding. *An application not filed in a timely manner shall entitle the prevailing party or PERB to summary judgment enforcing the final order of the PERB.*

(b) In a review by appeal under this section, all questions of fact determined by the PERB shall be conclusive, if supported by substantial evidence in the record considered as a whole. No objection not made before the PERB shall be considered in a review by the Superior Court, unless the failure to make the objection is excused by the court because of extraordinary circumstances.

(c) In reviewing a final order of the PERB, the court may enforce the order, modify the order and enforce it, set the order aside, or return the matter to the PERB with instructions for further proceeding not inconsistent with this chapter.

(d) The [Supreme] Court of the Virgin Islands shall have appellate jurisdiction of any decision of the Superior Court made pursuant to this chapter, unless otherwise provided by law.

3 V.I.C. § 530a (emphases added). Thus, if the NSF and the PERB are correct that the Superior Court should have construed Watson's motion as an appeal of the PERB's September 11, 2009 Order, the Superior Court would have lacked discretion to take any action other than entering "summary judgment enforcing the final order of the PERB."[8] 3 V.I.C. § 530a(a). But

---

[8] In their appellate briefs, both the NSF and the PERB contend that section 530a(a) codifies a jurisdictional requirement, and that the Superior Court therefore lacked subject matter jurisdiction over Watson's claim for interest. However, this Court, in construing section 380(a) of title 24 — which also provides for "summary judgment enforcing the final order of the PERB" if a petition for writ of review is not timely filed — observed that this same language "appears to contemplate that the Superior Court would continue to possess some adjudicative authority — albeit greatly circumscribed — with respect to a petition . . . even if it has not been timely filed." *Pub. Emp. Relations Bd. v. UIW-SIU*, 56 V.I. 429, 435 (V.I. 2012). Nevertheless, we noted that "the jurisdictional or non-jurisdictional nature of [the statute] is irrelevant to the particular case before this Court, since both [parties] properly challenged the timeliness of the [petitioner]'s petition for writ of review, and thus the Superior Court possessed an obligation to enforce the timeliness requirement." *Id.* at 435-36 (citing *Eberhart v.*

even though Watson's January 12, 2010 motion requested interest on his back pay award — the very same claim rejected by the PERB in its September 11, 2009 Order — the Superior Court declined to construe Watson's filing as a petition for writ of review on the following basis:

> Watson is not requesting the Court to review and reverse the PERB's September 11, 2009 Order denying him the interest on his back pay award due to the PERB's lack of statutory authority to grant it. Instead, this Court considers Watson's claim as a request for this Court to decide the issue of his entitlement to interest on the back pay award as a matter of law on the merits based upon this Court's inherent powers to grant interest on judgments.
>
> The Court's jurisdiction to decide Watson's claims for pre and post judgment interest on his back pay awarded by this Court's November 27, 2000 Judgment Order derives from [4] V.I.C. § 76, which grants the Superior Court original jurisdiction over all civil actions regardless of the amount in controversy. Consequently, although the Court had remanded the issue for the PERB to determine based upon its own statutory authority — once the PERB decided that it did not have the authority—Watson could still pursue his claims for interest on his back pay judgment award directly from the Court based upon the Court's original jurisdiction to do so.

(J.A. 106-07.)

We disagree with the Superior Court's analysis. While section 76 of title 4 of the Virgin Islands Code broadly confers the Superior Court with original jurisdiction in all civil actions, it is well established that specific statutes establishing comprehensive schemes for attaining judicial review in particular types of cases supplant statutes that broadly confer general jurisdiction. *See, e.g., Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981) (holding regulatory statute that provides a comprehensive scheme for judicial review precludes actions under general jurisdictional

---

*United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005)). Since the NSF and the PERB both promptly brought the untimeliness of Watson's filing to the Superior Court's attention in this case, we decline to decide, as part of this appeal, whether section 530a(a) codifies a jurisdictional requirement or claims-processing rule, since under the facts of this case, the result would be the same.

provisions); *In re Guardianship of Smith*, 54 V.I. 517, 526 (V.I. 2010) ("[W]hen a statute establishes a specific procedure for invoking the Superior Court's jurisdiction, the failure to follow that procedure deprives the Superior Court of its jurisdiction."); *Pichardo v. Comm'r of Labor*, 49 V.I. 447, 450 (V.I. 2008) (specific statute governing review of Department of Labor decisions supersedes the general statute permitting petitions for writ of review of agency decisions); *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 485 (V.I. 2008) ("when two statutes cover the same situation, the more specific statute takes precedence over the more general one, unless it appears the Legislature intended for the more general to control" (internal quotation marks and citations omitted)). Since section 530a(a) of title 3 provides a comprehensive framework for a party to appeal an adverse decision of the PERB to the Superior Court, it unquestionably supersedes the general grant of jurisdiction provided for in section 76 of title 4. To allow Watson to invoke section 76 of title 4 to seek an interest award from the Superior Court, months after the time to appeal the PERB's September 11, 2009 Order to the Superior Court had expired, would result in judicial interference with the PERB's oversight of the Personnel Merit System that is contrary to the clear intent of the Legislature.[9] *Cf. V.I. Conservation Soc'y v. Golden Resorts, LLLP*, 55 V.I. 613, 620-21 (V.I. 2011).

---

[9] Additionally, even if Watson could, instead of taking an appeal under section 530a(a), elect to prosecute a civil action in the Superior Court to obtain interest on the back pay award — which we do not hold — we find no basis for construing Watson's filing as a motion for interest on a judgment rather than a petition for writ of review. At no point did the Superior Court — or even the PERB — ever issue a monetary judgment in Watson's favor. "The term 'judgment' . . . is defined as '[a] court's *final determination* of the rights and obligations of the parties in a case." *Rohn v. People*, 57 V.I. 637, 644 (V.I. 2012) (quoting BLACK'S LAW DICTIONARY 918 (9th ed. 2009)). When a party is entitled to a monetary recovery in a civil case, the judgment must specify the exact amount of money that is due to the prevailing party. *See UIW-SIU*, 57 V.I. at 654-55; *Hard Rock Café v. Lee*, 54 V.I. 622, 627 n.6 (V.I. 2011); *see also UFI Razor Blades, Inc. v. District 65, Wholesale, Retail, Office & Processing Union*, 610 F.2d 1018, 1024 (2d Cir. 1979); *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir. 1970). Here, the Superior Court's November 27, 2000 Opinion and Order in Super. Ct. Civ. Nos. 333/1994 (STX) and 337/1994 (STX) simply remanded the matter to the PERB to award Watson back pay, without stating how much back pay Watson was entitled to receive. In fact, even the PERB's April 26, 2006 Order did not specify how much money the NSF was required to pay to Watson. Therefore, since no judgment had ever been entered, we find no basis to construe Watson's filing as a motion for interest on a judgment.

Likewise, the fact that the Superior Court had jurisdiction to review the PERB's original March 2, 1994 Order has no bearing on its authority to rule on the merits of the PERB's September 11, 2009 Order. When hearing an appeal from the PERB, the Superior Court functions as an appellate court. *See* 3 V.I.C. § 530a(a)-(c). As we have previously explained,

> In a record remand, [an appellate] court retains jurisdiction over the case, i.e., jurisdiction over the case remains with [the] court, but the record is returned to the trial court. In those circumstances, the trial court may be directed to clarify or amplify some portion of the record, to make additional findings, to hear further testimony, or to explain a ruling. The point of such a remand is to give the trial judge the opportunity to complete or clarify the record so that this court will have an adequate basis for review of the trial court's rulings. The trial court does not, however, have the authority to amend the ruling that is on appeal. . . . A "case" remand, on the other hand, returns the case to the trial court for all purposes. [The appellate] court retains no jurisdiction over the case and the appeal is terminated. If, after a case remand, a party is dissatisfied with the action of the trial court, the only course available to obtain review in [the appellate] court, is to file a new notice of appeal, once a final order or judgment is entered. That appeal is a new appeal, separate from the previous appeal that was terminated when the case was remanded.

*Hypolite v. People*, 51 V.I. 97, 102-03 (V.I. 2009). The Superior Court's November 27, 2000 Opinion and Order entered in Super. Ct. Civ. Nos. 333/1994 (STX) and 337/1994 (STX), which remanded the matter to the PERB so that it may award back pay to Watson, has none of the hallmark characteristics of a record remand. The November 27, 2000 Opinion did not state that the Superior Court retained jurisdiction over the matter. Nor did it direct the PERB to explain its decision not to award back pay; on the contrary, it expressly vacated that portion of the March 2, 1994 Order, which is the quintessential hallmark of a case remand. *See Martinez v. Stridiron*, S. Ct. Civ. No. 2011-0014, 2011 V.I. Supreme LEXIS 22, *14 (V.I. Mar. 22, 2011) (unpublished) (holding that "the underlying Appellate Division decision . . . did not mandate additional factual findings and — in fact — expressly reversed the Superior Court," and therefore was a case remand). And although not in and of itself determinative, the fact that the Clerk of the Superior Court

treated the PERB's July 31, 2007 motion as the initiating document for a new case and assigned it its own distinct case number, rather than simply docketing it as part of Super. Ct. Civ. Nos. 333/1994 (STX) and 337/1994 (STX), is further evidence that the Superior Court ordered a case remand rather than a record remand. *Cf. Hypolite*, 51 V.I. at 103 (noting that the clerk's failure to issue a mandate and to close the case provided evidence that the court intended a record remand).

 Under these circumstances, we can find absolutely no basis for construing Watson's January 12, 2010 motion as anything other than a request for the Superior Court to review the PERB's September 11, 2009 Order. Since Watson filed his motion well beyond the thirty-day period set forth in section 530a, and the NSF and the PERB both moved to dismiss Watson's attempted appeal as untimely, the Superior Court was required to issue an order granting "summary judgment enforcing the final order of the PERB."[10] 3 V.I.C. § 530a(a).

## IV. CONCLUSION

For the foregoing reasons, we reverse the Superior Court's March 23, 2012 Opinion and Order, and remand the case to the Superior Court so that it may enter an order enforcing the PERB's September 11, 2009 Order.

---

[10] In light of our holding that the Superior Court erred when it declined to construe Watson's *pro se* motion as a petition for writ of review, we need not address any of the other issues the parties have raised on appeal, including (1) the NSF's claim that the Superior Court erred when it exercised personal jurisdiction over it despite its earlier decision to dismiss it from the litigation for lack of service; (2) the PERB's contention that Super. Ct. Civ. No. 380/2007 (STX) had become moot well before Watson filed his *pro se* motion; (3) the PERB's claim that the Superior Court never granted Watson permission to intervene in the litigation; and (4) both parties' argument that the Superior Court erred in its merits analysis of whether Watson is entitled to pre- and post-judgment interest.