634 A.2d 464

STATE of Maryland

v.

Larry Allen BREEDEN.

No. 75, Sept. Term, 1993.

Court of Appeals of Maryland.

Dec. 22, 1993.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge (Retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge (retired, specially assigned).

I

Larry Allen Breeden pled guilty in the Circuit Court for Washington County to murder in the second degree and in addition he entered a plea of not criminally responsible by reason of insanity. Md. Rule 4–242(a) and (b)(3). The trial court accepted the guilty plea and a court trial was had on the issue of Breeden's criminal responsibility. Md. Rule 4–314(a)(4). The judge found Breeden to be criminally responsible and sentenced him to be imprisoned for a term of 25 years. Breeden appealed from the judgment on the issue of criminal responsibility as dictated by Md. Rule 4–314(a)(4). The Court of Special Appeals vacated the "judgment as to criminal responsibility" and remanded the case for retrial on that issue. *Breeden v. State,* 87 Md.App. 508, 512, 590 A.2d 560 (1991). The court explained that the reason for setting aside the judgment was that Breeden had not validly waived his right to a trial by jury. *Id.* at 511–512.

On retrial, Breeden put the issue to a jury. The jury found that he was criminally responsible. Breeden appealed from that judgment. The Court of Special Appeals reversed. *Breeden v. State,* 95 Md.App. 481, 622 A.2d 160 (1993). The State filed a petition for certiorari, which we granted, and Breeden filed a conditional cross-petition, which we denied.[1]

The State's petition for certiorari, Breeden's answer, the State's brief, and Breeden's brief each present the question to be resolved in this case in different phrasing. The bottom

---

1. Breeden's conditional cross-petition presented the question:

   Did the Court of Special Appeals err in refusing to find that [Breeden] had met his burden in establishing that he was not criminally responsible?

line, however, is whether the trial court abused its discretion by receiving in evidence at the second trial the transcribed testimony of a first-trial witness who was absent at the retrial.

The witness missing was Dr. Mario Torres. He was a staff psychologist at the Clifton T. Perkins Hospital Center and testified for the State as an expert in psychology. On his examination of Breeden, Torres concluded that Breeden has "an organic mental disorder," not otherwise specified, with evidence of alcohol dependence and marijuana abuse, that he has a "personality disorder ... with passive aggressive and dependent features," and that he was malingering. Torres acknowledged that Breeden has "a clear history of mental illness" and that "most of the diagnoses that [Breeden] has received have included a psychotic component which means that [he] loses touch with reality...." Still, Torres opined that Breeden was criminally responsible; in part, he said, "there was not enough evidence supporting a link or a connection between the mental illness and the time of the offense and the behavior of [Breeden] committing the offense." Torres was, of course, cross-examined by the defense but remained steadfast in his conclusions.

When the case came on for retrial on 6 January 1992, the State informed the court of the absence of Torres and made an oral motion to introduce into evidence the transcript of Torres's testimony. The State's Attorney for Washington County recited to the court the efforts of the State to obtain Torres's appearance. The prosecutor became aware in early November 1991 that Torres no longer worked at the hospital. We recount what the State then did as set out by the Court of Special Appeals in 95 Md. at 493–494, 622 A.2d 160:

> The hospital staff provided the prosecutor with the address of Dr. Torres's parents in Puerto Rico. On 6 November 1991, the State mailed a letter to Dr. Torres, in care of his parents, asking him to contact the Washington County State's Attorney's Office to discuss the possibility of testifying at [Breeden's] second trial. There was no response. On 26 November, the State sent another letter to the same address; again, there was no response. Then, a member of

the State's Attorney's Office composed a letter in Spanish, asking Dr. Torres to contact the office. The State mailed this letter on 16 December, again in care of Dr. Torres's parents at their address. Dr. Torres called the State's Attorney's Office on 27 December, which was a Friday. He informed an assistant state's attorney that he was residing in a monastery in Puerto Rico and in the process of becoming a Jesuit priest. He further advised that, after a discussion with the head priest, he learned that he would not be available until August 1993.

On the following Monday morning, 30 December, the State informed the trial court of its efforts to secure Dr. Torres's presence at trial. The prosecutor was asked if he had attempted to use the Uniform Act. When he answered in the negative, the court advised him to do so. The State's Attorney's Office contacted the United States Department of Justice in Puerto Rico on 31 December and was advised of the appropriate court in Puerto Rico to which the subpoena for Dr. Torres should be sent. The State mailed the appropriate paperwork via Federal Express, which was to have delivered the paperwork on 2 January 1992. The State's Attorney's Office, as of the morning of trial on 6 January, had not received a response to its Uniform Act request. The record does not disclose that the State's Attorney's Office made any effort to inquire what the authorities in Puerto Rico did with its request.

In the meantime, an assistant state's attorney attempted to contact Dr. Torres by telephone on Monday, 30 December 1991. First, he called the monastery where the doctor was living. Someone at the monastery told the assistance state's attorney that Dr. Torres had gone to spend the weekend with his family, and gave the attorney the family's phone number. When the attorney called the number, he spoke with someone who said that he was Dr. Torres's father. That person stated that he would ask Dr. Torres to call the assistant state's attorney. That call never came. . . .

After hearing argument of counsel, the circuit court ruled:

The Court would find that Dr. Torres is unavailable as a witness as he is absent from this trial and the State has been unable to secure his attendance by process or other reasonable means and would therefore grant the Motion to Introduce the Testimony of Dr. Torres Given at the Prior Proceedings where Dr. Torres appeared, testified, and was examined by the parties to this case.

The prosecution placed a transcript of Torres's testimony into evidence. The court explained to the jury:

The next witness that is being called is a witness who testified on a prior occasion and is unavailable to testify today for you. So his testimony will be presented by way of counsel reading prior questions and there will be somebody who will be standing in the stead of the witness and will be answering the questions. The questions in direct will be offered by [the Deputy State's Attorney] and the questions in cross examination will be offered by [counsel] for the defense.

The court directed the jury to "take this testimony as if it were coming from the witness and weigh it together with all of the other evidence that you have heard and will hear." The defense made clear its strong objection to receipt in evidence of Torres's prior testimony.

The procedure followed was that the Assistant State's Attorney was seated in the witness box, playing the part of Torres. The Deputy State's Attorney read the questions asked Torres on direct examination as reflected in the transcript and the Assistant State's Attorney read the answers. Defense counsel read the questions asked on cross-examination and the Assistant State's Attorney read the answers.

II

A

In all criminal prosecutions in the State of Maryland, the Sixth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment,

and Article 21 of the Maryland Declaration of Rights command that the accused shall enjoy the right to be confronted with the witnesses against the accused. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Franklin v. State,* 239 Md. 645, 212 A.2d 279 (1965).

> The prerogative of the defendant to have his accusers confront him is a keystone to our concept of criminal justice—grounded on the unwavering belief that an individual should be afforded the opportunity to challenge the witnesses against him through cross-examination.

*State v. Collins,* 265 Md. 70, 76, 288 A.2d 163 (1972). *See Chapman v. State,* 331 Md. 448, 455–456, 628 A.2d 676 (1993). How a witness appears when answering questions can often be as important in assessing credibility as are the words the witness utters. For that reason, the confrontation clause encompasses more than a mere opportunity for effective cross-examination. It compels a witness

> to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895), quoted in *Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–2538, 65 L.Ed.2d 597 (1980).

The question before us brings into play the confrontation requirements.

## B

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

*Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968), quoting *Pointer,* 380 U.S. at 405, 85 S.Ct. at 1068. It is true, *Barber* recognized at 390 U.S. at 722, 88 S.Ct. at 1320, that

> there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant.

"This exception," *Barber* continued,

> has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement.

*Barber* said, at 723:

> It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that "it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless."

(footnotes omitted). *Barber* squelshed that notion.

> "[I]ncreased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law."

*Id.* (footnote omitted). The Court assigned a more reaching meaning of "unavailable" within the context of the confrontation requirement. It declared:

> In short, a witness is not "unavailable" for purposes of the foregoing exception to the confrontation requirement unless the prosecutional authorities have made a good-faith effort to obtain his presence at trial.

*Id.* at 724–725, 88 S.Ct. at 1318. The Supreme Court further explored the exception to the confrontation requirement in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

It observed that "[t]he basic litmus of Sixth Amendment unavailability is established. . . ." The litmus test, the Court stated, was the "good-faith effort" to obtain the presence of the witness at trial as announced in *Barber*. The Court acknowledged:

> Although it might be said that the Court's prior cases provide no further refinement of this statement of the rule, certain general propositions safely emerge. The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution.

*Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543. The Court emphasized, however, that

> if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness."

*Id.* (emphasis in the original), quoting *California v. Green*, 399 U.S. 149, 189, n. 22, 90 S.Ct. 1930, 1951, n. 22, 26 L.Ed.2d 489 (1970) (concurring opinion, citing *Barber v. Page, supra*), 90 S.Ct. 1930, 1951, n. 22, 26 L.Ed.2d 489 (1970). The Court concluded that "[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." 448 U.S. at 74, 100 S.Ct. at 2543. "As with other evidentiary proponents," the Court reminded, "the prosecution bears the burden of establishing this predicate." *Id.* at 74–75, 100 S.Ct. at 2543–2544.[2]

---

2.  In *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the Court outlined a two-prong test for admitting prior testimony. *See Chapman v. State*, 331 Md. 448, 455, 628 A.2d 676 (1993). First, the witness must be unavailable. Second, the challenged evidence must bear "adequate 'indicia of reliability.'"

    The Court perceived "no reason to resolve the reliability issue differently in" *Roberts* than it did in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). 448 U.S. at 73, 100 S.Ct. at 2542. The Court continued:

In a nutshell, the "unavailability" of a material witness includes one who is absent from a trial and the proponent of the statement of the witness has been unable to procure the witness's attendance by process or other reasonable means. "Other reasonable means" require efforts in good faith and due diligence to procure attendance. If the declarant is so unavailable as a witness, former testimony bearing the indicia of reliability, given as a witness at another hearing of the same or a different proceeding, may be admissible if the party against whom the testimony is now offered had an opportunity to cross-examine the witness. In such circumstances, the receipt in evidence of the prior testimony does not offend either the confrontation requirement or the hearsay rule.[3] *See* Fed.R.Evid. 804(a)(5) and (b)(1). The law with respect to the impact of the confrontation requirement on the unavailability of a witness has been thus clearly and firmly established.

## III

### A

The increased cooperation between jurisdictions as to the procurement of a witness, noted by the Supreme Court in *Barber*, is evidenced by the enactment of legislation modeled after the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings. It was promulgated over half a century ago and has been adopted in

---

Since there was an adequate opportunity to cross-examine [the witness], and counsel ... availed himself of that opportunity, the transcript ... bore sufficient "indicia of reliability" and afforded " 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement' "....

*Id.,* quoting *Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 2314, 33 L.Ed.2d 293 (1972), in turn quoting *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). The reliability of Torres's testimony is not an issue in the case before this Court.

**3.** Former testimony "may be classified as an exception to the hearsay prohibition, or it may be considered as nonhearsay under the theory that the requirements of the hearsay concept have been met. The former view is accepted generally today...." 2 John William Strong *McCormick on Evidence* § 301 at 304 (4th ed. 1992) (footnote omitted).

substance in each state, the District of Columbia, the Virgin Islands, and Puerto Rico. *See* Uniform Act to Secure Attendance of Witnesses, 11 U.L.A. 1 (1974, 1993 pocket part). Jurisdictions have adopted variations to the Uniform Act, but the gist and goals of the model law remain intact. "The essence of the Uniform Act is to create a community of jurisdictions which will honor the request of fellow members for the appearance of witnesses at criminal proceedings under the conditions specified in the Act." *People v. Superior Court*, 224 Cal.App.3d 1405, 274 Cal.Rptr. 586, 589 (1990). "The purpose of the Uniform Act ... is to secure at trial the attendance ... of a material witness residing in another state." *State v. Duncan*, 648 S.W.2d 892, 893 (Mo.App.1983). *See also State v. Lesco*, 194 Kan. 555, 400 P.2d 695, 699 (1965), *cert. denied*, 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 529 (1966) ("The Uniform Act was intended as a matter of comity between states to enable states to obtain material witnesses for criminal prosecutions."). Long ago, shortly after the Uniform Act was promulgated, it was recognized that "[o]bviously the object of [a uniform statute for the attendance of witnesses enacted by New Jersey] is to promote the enforcement of the criminal laws and the administration of justice in criminal proceedings in the several states." *People of State of New York v. Parker*, 16 N.J.Misc. 471, 1 A.2d 54, 55 (Cir.Ct.1936).

## B

Maryland's version of the Uniform Act was originally adopted in 1937 and is now codified as § 9–301 through § 9–306 of the Courts and Judicial Proceedings Article (1973, 1989 Repl.Vol.). Section 9–302 governs *summoning witnesses in this state to testify in another state*; § 9–303 covers bringing witnesses from another state to testify in Maryland. Section 9–303(a) declares:

If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this State, is a material witness in a prosecution pending in a

court of record in this State, or in a grand jury investigation which has commenced or is about to commence, a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. A certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this State to assure his attendance in this State, unless the witness shall be admitted to bail by the appropriate authority, upon condition that the witness will appear at the time and place specified in the subpoena or summons served upon him. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.[4]

Subsection (b) provides for tender of mileage to the desired witness and punishment if, after coming into this State, the witness fails without good cause to attend and testify as directed. Section 9–304 grants the witness exemption from arrest and service of process. Section 9–305 of the Act declares that it "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it."

C

Puerto Rico has enacted a "Uniform Act to secure the attendance of witnesses within or from without the Commonwealth in criminal cases," now codified as 34 L.P.R.A. §§ 1471–1476 (1991). Section 1474, like the Maryland Act, declares that the provisions of its Act "shall be interpreted with regard to their general purpose to make uniform the law of the states which enact and promulgate them." Section 1471 of the Puerto Rico Act provides:

---

4. Section 9–301 of the Courts and Judicial Proceedings Article (1973, 1989 Repl.Vol.) defines "state" as "any state or territory of the United States and the District of Columbia," subsection (b), and "witness" as "a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal prosecution or proceeding," subsection (d).

If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in criminal prosecutions in Puerto Rico, certifies under the seal of such court that there is a criminal prosecution for a felony pending in such court, that a person being within this Commonwealth is a material witness in such prosecution, and that his presence will be required for a specified number of days, upon receipt of such certificate, the judge of the part of the Superior Court in which such person is, shall fix a time and place for a hearing and shall notify the witness of such time and place.

The section continues:

If, at the hearing, the judge determines that the witness is material and necessary, that it will not cause undue hardship to the said witness to be compelled to attend and testify in the prosecution in the other state or territory, that the witness will not be compelled to travel more than two thousand (2,000) miles to reach the place of trial by the ordinary routes of travel, and that the laws of the state in which the prosecution is pending and those of any other state through which the witness may be required to pass by the ordinary route of travel will give him protection from arrest and from the service of civil and criminal process, he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, at a time and place specified in the summons.

The section concludes by subjecting the summoned witness to punishment if the witness fails without good cause to attend and testify as directed.

■ Beyond question, the Acts of Maryland and Puerto Rico afforded the State in this case a means to procure the attendance of Torres at Breeden's second trial. They provide the force necessary to compel the attendance at a trial in Maryland of a witness without Maryland's jurisdiction.

## IV

We are in full accord with the holding of the Court of Special Appeals that the trial judge committed reversible error in admitting the transcript of Torres's testimony at the first trial into evidence at the second trial. Torres testified at the first trial in January 1990. The opinion of the Court of Special Appeals reversing the judgment entered at the first trial was filed on 30 May 1991. The mandate issued on 1 July 1991. The new trial was set for 6 January 1992. The State made no attempt to procure the attendance of Torres until 6 November 1991 after it learned that Torres was no longer at the hospital; then its efforts to procure him consisted of letters mailed to the address of Torres's parents. These were unanswered except for one mailed 16 December 1991. In reply to that letter Torres called the State's Attorney's Office and explained that he was residing in a monastery in the process of becoming a Jesuit priest and would not be available in any event until August 1993. Torres had left his employment in Maryland and departed from the State. He had abandoned his career as a psychologist. The State had no sound reason to believe under all the circumstances that Torres would willingly agree to return some 1,600 miles to testify. In light of all that, the State still sat on its hands with respect to the Uniform Act. It finally looked to the Act only when prodded by the trial court on 31 December 1991. It sent the necessary documents via Federal Express for delivery to the appropriate Puerto Rican court on 2 January 1992. Obviously, it was not reasonable for the State to assume that all the required proceedings under the Act could be satisfied in four days. Yet the State did not ask for a continuance. Nor does the record disclose any attempt to learn whether the Puerto Rican court was likely to entertain favorably the request to compel Torres's attendance. Assuming that the Puerto Rican court proved amenable to the State's wishes, the State gave no indication how long it might take for the hearing process to run its course and send Torres on his way to Washington County. It seems that the State was more than

content to use the transcript to present Torres's testimony to the jury.

It cannot be said that resort to the Act would be futile or unreasonable. The mechanism to procure Torres's attendance was there all along. Certainly it was at least possible that using the Act in a timely fashion could have enabled the jurors to hear Torres himself testify. Even if that possibility were remote, the obligation of good faith under these circumstances demanded that the State bring the Act into play and allow it to do the job for which it was created. The State's efforts short of a realistic attempt at process were simply not sufficient to meet its burden of establishing that Torres was "unavailable." Here, timely resort to the Uniform Act was a necessary requisite. It was unreasonable for the State to wait as long as it did.[5] The trial court abused its

---

**5.** The Court of Special Appeals in *Breeden v. State*, 95 Md.App. 481, 503–504, 622 A.2d 160 (1993), asserted that

> before an out-of-state witness whose location is known is declared "unavailable" and his prior testimony is admitted, the State's (or, for that matter, the defense's) good-faith effort in procuring the presence of that witness at trial *must* include a reasonable, timely attempt to utilize the provisions of the Uniform Act.

(emphasis added). The court explained:

> In our view, the law's preference for live testimony and the spirit of cooperation between states that characterizes the Uniform Act make the requirement that the State use the Act as part of its good-faith effort a fair and reasonable one.

*Id.* at 504, 622 A.2d 160. And *see id.* at 498–506, 622 A.2d 160. The State interprets the intermediate appellate court's opinion as asserting that a timely use of the Uniform Act is mandatory when the location of the witness is known. That view, the State urges, was incorrect. Since the decision holding the challenged statement inadmissible was based on incorrect reasoning, the State contends, it must be vacated.

We agree that if *Breeden* be read as stating that the use of the Uniform Act is mandatory in every case, the court was wrong. As we see the law enunciated by the Supreme Court and recognized by the Federal Rules of Evidence, unavailability of a witness may be established "by process *or* other reasonable means." Fed.R.Evid. 804(a)(5) (emphasis added). But we do not agree that this view of the Court of Special Appeals compels reversal of the judgment. If the decision of the lower court is correct for a reason properly before us, but not for the reason on which the lower court based its decision, this Court will affirm the decision of the lower court. *Cf. Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct.

discretion by receiving in evidence at the second trial the transcribed testimony of Torres.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED;*

*CASE REMANDED TO THAT COURT WITH DI-RECTION TO REMAND TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR A NEW TRIAL;*

*COSTS TO BE PAID BY WASHINGTON COUNTY.*

680, 62 L.Ed.2d 654 (1980); *Aubinoe v. Lewis,* 250 Md. 645, 649, 244 A.2d 879 (1968).

We note that *Breeden,* 95 Md.App. at 507, 622 A.2d 160, flatly proclaimed

Whether the prosecution made a diligent, good-faith effort to se-cure the presence at trial of a witness turns on the particular facts of each case.

In this case, the court stated:

[T]he State's failure to make timely use of the Uniform Act to attempt to compel Dr. Torres's presence precluded a finding that Dr. Torres was "unavailable" for trial.

*Id.* As we have seen, on the facts of this case, we are in accord with that decision. The use of the Uniform Act may often be, as here, a necessary element in the circumstances of a particular case. But this is not to say that there is a bright-line rule that it must always be used.