# WENDELL RAWLINS, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2014-0004

Supreme Court of the Virgin Islands

December 24, 2014

594

DOLACE MCLEAN, ESQ., VISIONS Law Firm, St. Thomas, USVI, CLIVE RIVERS, ESQ., St. Thomas, USVI, *Attorneys for Appellant.*

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 24, 2014)

CABRET, *Associate Justice*. Wendell Rawlins appeals his convictions for first-degree aggravated rape and child abuse. For the reasons that follow, we reverse Rawlins's convictions and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2011, Lilas Francis picked up her eight-year-old great-niece J.J. from Bethel Baptist Church on St. Thomas. Later that afternoon, J.J. told Francis that earlier that day her second-grade teacher, Rawlins, asked several students to bring J.J. to his desk, and after telling the other students to leave, ordered J.J. under his desk and forced her to perform oral sex. When J.J.'s mother, Lisa Melendez returned home that evening, Francis told her what J.J. had said. After hearing the story from J.J. herself, Melendez took J.J. to the police station. The next day Melendez took J.J. to Dr. Hilary Woodson, the family's physician. During the visit, J.J. told Dr. Woodson what happened, and Dr. Woodson performed a test for sexually transmitted diseases, which came back negative. On February 25, 2011, J.J. recounted the incident to Dilsa Capdeville, a social worker, who video-recorded the interview. Later that same day, Rawlins was called to the police station where he was interviewed and subsequently arrested.

On March 15, 2011, the People of the Virgin Islands charged Rawlins with first-degree aggravated rape, first-degree unlawful sexual contact, and child abuse. The Superior Court held a three-day trial beginning on April 17, 2012, in which both J.J. and Melendez testified. At the end of trial, but prior to the submission of the case to the jury, the Superior Court granted Rawlins's motion to dismiss the first-degree unlawful sexual contact charge. On April 19, 2012, the People filed a second amended

---

[1] Although the People entered a notice of appearance in this matter, it did not file a brief or otherwise participate in this appeal.

information, charging Rawlins with only first-degree aggravated rape and child abuse. The jury deliberated for two days before informing the court that it was deadlocked, prompting the court to direct them to deliberate further. After the deadlock continued, the Superior Court granted Rawlins's motion for a mistrial on April 23, 2012.

On May 10, 2012, the People filed a notice of intent to prosecute and a motion for a second trial, which the Superior Court granted on May 29, 2012. During an August 21, 2012 pretrial conference, the Superior Court ordered the parties to submit briefing on whether "the reading of the transcript testimony of J.J., and her mother, Lisa Melendez . . . [would] violate [Rawlins's] right of confrontation in light of *Crawford*."[2] On August 29, 2012, the People filed a "Brief Regarding Reading of Transcript Under Rule 804," which requested that the court declare J.J. and Melendez unavailable "because of their refusal to cooperate and testify . . . since leaving the [T]erritory in mid-June of 2012" and argued that Rawlins's right of confrontation would not be violated because J.J. and her mother were unavailable and had already been subject to cross-examination during the first trial. In support of its brief, the People attached a screenshot of a text message from Melendez to the prosecutor, in which Melendez indicated that neither she nor J.J. would be returning to testify at the second trial because Melendez feared that testifying again would affect J.J.'s "mental well-being." On September 4, 2012, Rawlins filed an opposing brief, arguing that the People had failed to make a sufficient showing of unavailability.

On September 6, 2012, the People filed a "Motion to Certify Petition to Ninth Judicial District Circuit Court of Florida to Summons Material Witness for Extradition Hearing," in which it asked the Superior Court to issue a certificate to the Ninth Judicial Circuit Court of Florida under 5 V.I.C. § 3863, "direct[ing] Lisa Melendez, and [the] minor in her custody, J.J., . . . to be summon[ed] . . . for a witness extradition hearing to determine if they are material witnesses." In the motion, the People indicated that it was aware of Melendez's new address in Orlando, Florida, and that the People had been in contact with an attorney in the

---

[2] *See Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (holding that the admission of testimonial statements against a defendant is unconstitutional when the declarant does not appear at trial, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination).

Ninth Circuit State Attorney's Office in Orlando, Florida, who "would be responsible for serving the summons" once it was issued. The Superior Court took no action on the People's motion to certify and on August 15, 2013 — nearly a year after the court requested briefing on whether J.J. and Melendez should be declared unavailable — the court held a final pretrial conference in which it denied the People's petition for certification. On August 30, 2013, the Superior Court set a new trial date for October 15, 2013, and ordered "that the People . . . use the prior trial transcript testimony of the minor in the event the minor is not available for trial."

Rawlins's second trial began on October 15, 2013. Prior to the commencement of trial, Rawlins again objected that the reading of J.J.'s transcript testimony would violate his right to confront a witness against him. In addition, Rawlins argued that at the very least, Melendez's transcript testimony should not be read into the record for the same reasons. The Superior Court disagreed, stating that it had already overruled Rawlins's objections to the admission of J.J.'s transcript testimony and concluding that Melendez's transcript testimony could also be read into the record because "the two situations [are] essentially the same."

The People's first witness was Francis, J.J.'s great-aunt. Francis testified that on February 22, 2011, J.J. was under the age of 13. Francis also testified that she picked up J.J. from Bethel Baptist Church on February 22, 2011, and that later the same day J.J. told her that Rawlins had forced her under his desk, unzipped his pants, and ordered her to perform oral sex.

Following Francis's testimony, the court permitted J.J.'s prior testimony from the first trial to be read into the record over Rawlins's objection.[3] In her testimony, J.J. described the events of February 22,

---

[3] Prior to reading J.J.'s and Melendez's transcript testimony into the record, the court discussed the practical difficulties of reading written transcript testimony at trial. For instance, the court determined that sidebars — discussions held between the parties and the court outside the presence of the jury — would not be read into the record, but required that all objections, whether sustained or overruled, be read into the record. The court also permitted the People to read J.J.'s transcript testimony before Melendez's transcript testimony, even though at the original trial Melendez's testimony was heard first. To read the prior transcript testimony, Attorney Veronda, lead attorney for the People, read the People's questions, and Attorney Sigrid Tejo-Sprotte, also an attorney for the People, read the parts of both J.J. and

2011. In particular, J.J. stated that she was eight years old in February 2011, and that after lunchtime Rawlins asked three students from the class to bring J.J. to his desk. J.J. further testified that after she was taken to his desk, Rawlins tickled her under her arms and forcibly pushed her under his desk. J.J. testified that once under the desk, Rawlins unzipped his pants, took out his penis, and told her to "lick it." According to J.J., after she refused, Rawlins took her head and placed it next to his genitals, at which point she opened her mouth and complied. J.J. stated that after the incident she went back to her desk and did her homework until her great-aunt picked her up from school. On cross-examination, J.J. stated that earlier that morning Rawlins had reprimanded her on at least two occasions.

The People next read Melendez's testimony from the first trial into the record. During that testimony, Melendez stated that in February 2011, J.J. was eight years old and enrolled at Bethel Baptist Church, that Francis made her aware of the incident after returning home from work on February 22, 2011, and that after she heard the story from J.J., she took J.J. to the police. Melendez also testified that on the following day she took J.J. to the family doctor, where she heard J.J. recount the story again.

The People then called Detective Albion George, who first interviewed J.J. on the night of the incident. Detective George testified that on the day after the incident, he went to Bethel Baptist Church, where he took photographs of the school and classrooms. Detective George also testified that on February 25, 2011, Rawlins went to the police station, was read his *Miranda* rights,[4] and interviewed. At trial, Detective George read from a report he wrote during his interview with Rawlins, which recorded Rawlins's responses to his questions.

The People's next witness was Dr. Hillary Woodson, the Melendez's family physician. Dr. Woodson's notes from her interview with J.J. were admitted into evidence and read to the jury. In her notes, Dr. Woodson

---

Melendez. Although in the original trial J.J. moved around the courtroom — demonstrating how she was forced under the desk and how she knelt during the incident—it does not appear that these physical acts were repeated by Attorney Tejo-Sprotte.

[4] *See Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (requiring that a suspect be informed of his constitutional rights — including the right to remain silent — before a custodial interrogation).

wrote that J.J. told her that she was held under a desk by a teacher and that she was forced to "lick his nuts." Dr. Woodson also testified that she performed an oral culture on J.J., testing for chlamydia and gonorrhea, which came back negative.

Lastly, the People called Dilsa Capdeville, a social worker and the executive director of Kidscope, a child advocacy center providing services to children who have been sexually molested. Capdeville testified that she has been doing social work in the Territory for 49 years and that she has been the executive director of Kidscope for 17 years. Capdeville also testified that she has been trained to conduct forensic interviews — a specialized type of interview with children who have been victims of sexual crimes — and that in her career she has conducted over 200 forensic interviews. After describing her background and experience, Capdeville was admitted as an expert in forensic interviews. The People then moved to introduce a video recording of the interview that Capdeville conducted with J.J. three days after the incident on February 25, 2011, and the entirety of the interview was played for the jury. In the interview, J.J. recounted to Capdeville the events of February 22, 2011, in detail. Following Capdeville's testimony, the People rested.

At the end of the People's case-in-chief, Rawlins moved for a judgment of acquittal based on insufficient evidence, which the Superior Court denied because it found the evidence sufficient for a jury to find the elements of first-degree aggravated rape and child abuse. In support of his defense, Rawlins called Joseph Henry, Edris Flemming, Daryl George, Editha Jackson, Yolanda Osaro, and Bentley Thomas. Taken together, these witnesses testified to Rawlins's character, noting that he was the youth president at Bethel Baptist, and that he is "decent," "moral," "respectful," "approachable," and overall a good teacher. Each witness also stated that they were "shocked" when they heard the charges against him, both because the allegations were "not consistent with that [they knew] about him," and because it would be "impossible" for it to happen in his classroom because it is open and children are constantly running in and out. In addition, several witnesses pointed out that Rawlins's desk is too small for him to sit at with both feet under it, making it unlikely that he could commit the offense as described by J.J. Lastly, Rawlins called Francis and Detective George, and then rested his case.

At the close of trial, Rawlins renewed his motion for a judgment of acquittal, again arguing that the evidence was insufficient to support the

charges, which the Superior Court again denied. The jury began its deliberations on the afternoon of October 17, 2013. The next day the jury sent a note to the judge requesting a laptop to view J.J.'s recorded interview with Capdeville, which the Superior Court provided. Later that day, the jury found Rawlins guilty on both counts.

On November 27, 2013, Rawlins filed another motion for a judgment of acquittal, or in the alternative, a new trial. In his written motion, Rawlins argued that the People failed to make an adequate showing that J.J. and Melendez were unavailable and that, accordingly, reading J.J.'s and Melendez's transcript testimony into the record violated his right to confront his accusers. On December 4, 2013, the People opposed Rawlins's motion, arguing that because it was clear that J.J. and Melendez were unavailable and had previously been subject to cross-examination by Rawlins, it was not a violation of the Confrontation Clause to read their prior transcript testimony into the record.

The Superior Court denied Rawlins's motion at the January 8, 2014 sentencing hearing, and stood by its finding that J.J. and Melendez were unavailable to testify. In addition, the Superior Court sentenced Rawlins to 22 years' imprisonment for first-degree aggravated rape, stayed his sentence for child abuse pursuant to 14 V.I.C. § 104, certified Rawlins as a sex offender, and ordered that upon his release he register as a tier-three sex offender in the Virgin Islands. The Superior Court entered its judgment on January 16, 2014, and Rawlins filed a timely notice of appeal.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). The Superior Court's January 16, 2014 judgment was a final judgment, and therefore we have jurisdiction over Rawlins's appeal. *Cascen v. People*, 60 V.I. 392, 400 (V.I. 2014); *see also Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (a written judgment embodying the adjudication of guilt and the sentence imposed constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

## III. DISCUSSION

Rawlins argues that the Superior Court should have granted his motion for a judgment of acquittal because the evidence was insufficient to

support his convictions. Rawlins also argues that the Superior Court committed reversible error when it permitted the People to read J.J.'s and Melendez's prior testimony from the first trial into the record at his second trial in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. We address each argument below.

## A. Sufficiency of the Evidence

■ Rawlins first challenges the sufficiency of the evidence supporting his convictions for first-degree aggravated rape and child abuse. An appellant who challenges the sufficiency of the evidence bears a "very heavy burden." *Phillip v. People*, 58 V.I. 569, 583 (V.I. 2013) (quoting *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009)). "In reviewing a challenge to the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Webster v. People*, 60 V.I. 666, 672 (V.I. 2014) (quoting *Cascen*, 60 V.I. at 401).

### 1. First-degree aggravated rape

■ The People charged Rawlins with first-degree aggravated rape under 14 V.I.C. § 1700(a)(1), which provided[5] that "[w]hoever perpetrates an act of sexual intercourse or sodomy with a person not the perpetrator's spouse . . . [w]ho is under the age of thirteen . . . is guilty of aggravated rape in the first degree." Count one specified that on February 22, 2011, Rawlins "perpetrate[d] an act of sodomy with a person not his spouse, . . . J.J., who was under thirteen years of age, by putting his penis in her mouth." Section 1699 of title 14 provides that "sodomy means carnal knowledge of any person by the mouth, i.e., cunnilingus or fellatio; or by the anus; or by submission to the same." In his various

---

[5] Section 1700(a)(1) was revised on October 15, 2013, removing the requirement that the victim not be the perpetrator's spouse. Act No. 7517, § 1(a). In this case, since the alleged incident occurred on February 22, 2011, prior to the Legislature's revision of section 1700(a)(1), we address the elements of the crime in effect at that time of the act. *See Collins v. Youngblood*, 497 U.S. 37, 45-46, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990) (the United States Constitution prohibits imposing punishment for an act that was not punishable at the time it was committed).

motions for a judgment of acquittal, Rawlins argued that the evidence was insufficient to support a conviction because the elements of first-degree aggravated rape were not met. The Superior Court disagreed, finding the testimony introduced at trial sufficient to support his convictions. On appeal, Rawlins repeats his earlier sufficiency argument.

In order to meet its burden, the People was required to introduce evidence sufficient to show that J.J. was under the age of 13 at the time of the offense, that she was not Rawlins's spouse, and that Rawlins engaged in an act of "sodomy" with her. 14 V.I.C. § 1700(a)(1). At trial, the People introduced the testimony of Francis, J.J., Melendez, and Dr. Woodson, who all testified that on February 22, 2011, J.J. was eight years old. Specifically, Dr. Woodson testified that J.J. was born in 2002. While the People did not introduce any direct evidence establishing that J.J. was not Rawlins's spouse at the time of the offense,[6] since the marriage of a girl under the age of 14 is prohibited under Virgin Islands law, 16 V.I.C. § 2, and the evidence at trial established that J.J. was eight years old at the time, a reasonable jury could have found beyond a reasonable doubt that J.J. was not Rawlins's spouse at the time of the incident. *See Francis v. People*, 59 V.I. 1075, 1079 (V.I. 2013) (circumstantial evidence of the victim's age was sufficient even without particular documentary evidence of that fact). Moreover, J.J. testified that on February 22, 2011, Rawlins forced her under his desk, unzipped his pants, pulled out his penis, and ordered her to "lick it," which she testified that she did. As this Court has previously held, "the testimony of one eyewitness is sufficient for the purpose of identification of the perpetrator of the crime." *Connor v. People*, 59 V.I. 286, 291 (V.I. 2013) (citing 29A AM. JUR. 2D *Evidence* § 1363 (2012)); *see also Francis v. People*, 57 V.I. 201, 211-12 (V.I. 2012) ("The testimony of one witness is sufficient to prove any fact."). And even though we hold in the following section that the admission of J.J.'s and Melendez's testimony violated the Confrontation Clause, we consider all evidence that was before the jury during deliberations in addressing a sufficiency challenge, even if that evidence was improperly admitted. *Cascen*, 60 V.I. at 409 ("[W]hen an appellate court reviews the sufficiency of the evidence, it must consider all the evidence the jury had before it, including any evidence that is later

---

[6] Although Melendez testified that J.J. was not married at the time of the first trial, there was no direct evidence that J.J. was not married at the time of the offense.

determined to be inadmissible." (quoting *Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012))). Therefore, because the testimony of J.J. alone, if credited by the jury, was sufficient for a reasonable juror to find the elements of first-degree aggravated rape beyond a reasonable doubt, the evidence was sufficient to support Rawlins's conviction on this count.

## 2. *Child abuse*

The People also charged Rawlins with child abuse under 14 V.I.C. § 505, which provides that "[a]ny person who abuses a child . . . shall be punished by a fine of not less than $500, or by imprisonment of not more than 20 years, or both." Count two of the People's second amended information specified that Rawlins "abuse[d] a child, . . . J.J., by engaging in sexual conduct with her, by putting his penis in her mouth." Section 503(a) of title 14 states that "[a]buse means the infliction of physical, mental, or emotional injury upon a child, or maltreatment, sexual conduct with a child, or exploitation of a child by any person." Section 503(c) defines "child" as "any person under the age of eighteen." Like his sufficiency argument for first-degree aggravated rape, Rawlins argued in his motion for a judgment of acquittal that the People failed to introduce sufficient evidence to convict him for child abuse. The Superior Court concluded otherwise, denying Rawlins's motion for a judgment of acquittal.

To meet its burden under this count, the People was required to present evidence that J.J. was under 18 at the time of the offense, and that she was abused by Rawlins. 14 V.I.C. § 505. As was the case for count one, several witnesses testified that on February 22, 2011, J.J. was under the age of 18. Additionally, J.J. testified that she was forced to put her mouth on Rawlins's penis, which would clearly constitute "sexual conduct" with a child within the meaning of "abuse" as defined in section 505.[7] Since J.J.'s testimony standing alone, if believed, could support the

---

[7] Although this Court has previously held the first charging phrase of section 505 — "[a]ny person who abuses a child" — to be unconstitutionally vague as applied, section 505 is not vague as applied to Rawlins. *LeBlanc v. People*, 56 V.I. 536, 544-45 (V.I. 2012) (holding that the first charging phrase of section 505 is unconstitutionally vague as applied where it was not clear whether touching a minor's genitals through her pants constituted "sexual conduct" as defined by the statute). In this case, there can be no doubt that oral sex falls within the bounds of what is proscribed by section 505. *See* 14 V.I.C. § 503(a) ("abuse" means "sexual

elements of child abuse, the People introduced sufficient evidence upon which a jury could find Rawlins guilty beyond a reasonable doubt.

## B. Confrontation Clause of the Sixth Amendment

Rawlins also argues that the admission of J.J.'s and Melendez's prior transcript testimony in his second trial was reversible error in violation of his right to confront witnesses against him guaranteed by the Sixth Amendment to the United States Constitution.[8] This Court reviews the Superior Court's evidentiary rulings for an abuse of discretion, unless the court's decision involves application of a legal precept, in which case we exercise plenary review. *Simmonds v. People*, 59 V.I. 480, 485-86 (V.I. 2013); *see also Latalladi*, 51 V.I. at 141 ("The standard of review for challenges under the Sixth Amendment's Confrontation Clause is plenary.").

 The Confrontation Clause of the Sixth Amendment[9] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is implicated when "a declarant's statement is introduced against the defendant at trial and the declarant does not appear at trial." *Rivera v. People*, 53 V.I. 589, 593 (V.I. 2010) (citing *Crawford v. Washington*, 541 U.S. 36, 50, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)); *see also Cascen*, 60 V.I. at 410. "[T]he particular vice that gave impetus to the [Confrontation Clause] was the practice of trying defendants on

conduct with a child"); *see also* 14 V.I.C. § 1027 ("sexual conduct means . . . oral copulation" for purposes of the Virgin Islands indecency statutes).

[8] Although Rawlins alludes to the admissibility of J.J.'s and Melendez's transcript testimony under Federal Rule of Evidence 804(b)(1)(A) and (B), which permit the admission of an unavailable declarant's former testimony in a subsequent proceeding as an exception to the rule against hearsay, since he frames his argument in purely constitutional terms, we do not address whether the prior transcript testimony was admissible under an exception to the rule against hearsay under the Federal Rules of Evidence. *See California v. Green*, 399 U.S. 149, 155-56, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (while the rules against hearsay and the Confrontation Clause generally "protect similar values," the "overlap is [not] complete" and the United States Supreme Court "ha[s] more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception"); *see also* 2010 V.I. Sess. Laws 50 (Act No. 7161, § 15(b)) (adopting the Federal Rules of Evidence to govern the admission of evidence in the Superior Court of the Virgin Islands).

[9] The Sixth Amendment of the United States Constitution is applicable in the Virgin Islands pursuant to section 3 of the 1954 Revised Organic Act. 48 U.S.C. § 1561.

'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact." *California v. Green*, 399 U.S. 149, 156, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); *see also Mattox v. United States*, 156 U.S. 237, 242-243, 15 S. Ct. 337, 39 L. Ed. 409 (1895). To remedy the dangers of admitting an out-of-court statement when the witness is not present at trial, the right of confrontation insured that the witness gave his statements under oath, submitted to cross-examination, and "permit[ted] the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Green*, 399 U.S. at 158. The preference for a witness's live testimony traces its origin to the "literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." *Id.* at 157-58; *see United States v. Kehm*, 799 F.2d 354, 360-61 (7th Cir. 1986) ("[T]he constitution . . . strongly favor[s] live testimony."); *see also* 3 WILLIAM BLACKSTONE, COMMENTARIES *373-74 (1768) (through live testimony "persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behavior, and inclinations of the witness"); *Gov't of the V.I. v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967) ("The innumerable telltale indications which fall from a witness during the course of his examination are often much more of an indication . . . of his credibility and the reliability of his evidence than is the literal meaning of his words."). Accordingly, the United States Supreme Court has repeatedly noted the near unanimity with which it has consistently expressed the belief that "the right of confrontation . . . is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Barber v. Page*, 390 U.S. 719, 721, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968).

In light of the history and purpose of the Confrontation Clause, the United States Supreme Court has held that a testimonial statement cannot be admitted against the accused at trial when the declarant does not testify at trial, "unless she [is] unavailable to testify, and the defendant [has] had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53-54. The constitutional requirement that a witness be "unavailable" before her prior testimony is admissible stands on separate footing that is independent of, and in addition to, the requirement of a prior opportunity

for cross-examination. *United States v. Yida*, 498 F.3d 945, 950-51 (9th Cir. 2007); *see also Barber*, 390 U.S. at 724-25 (the admission of prior testimony of a declarant that had been subjected to cross-examination in an earlier proceeding violated the Confrontation Clause because the prosecution did not prove that the witness was unavailable). The basic test for unavailability is that "a witness is not 'unavailable' . . . unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber*, 390 U.S. at 724-25; *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) (the "lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness"), *abrogated on other grounds by Crawford*, 541 U.S. at 63-64; *Hamilton v. Morgan*, 474 F.3d 854, 858-59 (6th Cir. 2007) (the prosecution's obligation to make a good-faith effort is "context-specific"). The People bears the burden of establishing that the declarant is unavailable. *Roberts*, 448 U.S. at 74.

 In this case, the People filed a motion to certify a petition to the Ninth Judicial District Circuit Court of Florida to summon J.J. and Melendez for an extradition hearing. The People moved to certify the summons pursuant to 5 V.I.C. § 3863, which provides that "[i]f a person in any state, which by its law has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in the Virgin Islands, is a material witness in a prosecution pending in a court of record in the Virgin Islands," a judge in the Virgin Islands "may issue a certificate . . . stating these facts . . . [which] shall be presented to a judge of a court of record in the county in which the witness is found." Section 3863 is found within the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, 5 V.I.C §§ 3861-65, which was adopted in the Virgin Islands in 1957. "The purpose of the Uniform Act . . . is to secure at trial the attendance . . . of a material witness residing in another state." *State v. Duncan*, 648 S.W.2d 892, 893 (Mo. Ct. App. 1983). Since the creation of the Uniform Act, virtually every state has adopted it in some form. *State v. Breeden*, 333 Md. 212, 634 A.2d 464, 469 (1993) ("[The Uniform Act] was promulgated over half a century ago and has been adopted in substance in each state, the District of Columbia, the Virgin Islands, and Puerto Rico.").

Here, while the People made an effort to secure the attendance of J.J. and Melendez at Rawlins's second trial by seeking an extra-territorial

summons, the Superior Court — without comment or explanation — denied the People's motion and appeared to conclude that J.J. and Melendez were unavailable for purposes of the Confrontation Clause simply because they now lived in Florida and because Melendez had stated that they would not return for a second trial. This was error. Indeed, the Superior Court stated that it "[did] not have the authority to issue extra-territorial process," despite the fact that both the Virgin Islands and Florida have adopted the Uniform Act, which specifically enables the procurement of an out-of-Territory witness in a criminal trial. 5 V.I.C. § 3863; FLA. STAT. § 942.02(1)-(4); *see also Harrell v. State*, 709 So. 2d 1364, 1370 (Fla. 1998) (interpreting and applying Florida's version of the Uniform Act).

 Moreover, the Superior Court, in its post-trial explanation for why it did not grant the People's motion to certify summons to J.J. and Melendez, appeared to be under the impression that merely filing a motion to certify with the court, without more, constituted "reasonable steps" warranting a finding of unavailability. We again cannot agree. Against the relatively slight burden on the People to actually utilize the provisions of the Uniform Act stands the clear and definite harm to Rawlins in being denied his constitutional right to confront J.J. and Melendez at his second trial. Accordingly, before an out-of-Territory witness whose location is known is declared unavailable, the People's good-faith effort in procuring the presence of that witness must include "a reasonable, timely attempt to utilize the provisions of the Uniform Act." *Breeden v. State*, 95 Md. App. 481, 622 A.2d 160, 171-74 (Md. Ct. Spec. App. 1993) (collecting cases); *see Hamilton*, 474 F.3d at 859 (if the desired witness is beyond the subpoena power of the trial court but an established procedure of voluntary cooperation exists, then the prosecution must go to reasonable lengths to utilize that procedure to locate, contact, and arrange to reasonably transport the witness); *Drummond v. State*, 86 Nev. 4, 462 P.2d 1012, 1014 (1970) (there could be no finding of good faith where the prosecution did not use the Uniform Act despite knowing before trial the witness's out-of-state address and that the witness was in fact located or residing there). In this case, while the People initiated a good-faith effort to procure the attendance of J.J. and Melendez by filing the motion to certify, the Superior Court erred when it denied the People's request to utilize the Uniform Act and

subsequently determined that J.J. and Melendez were unavailable for Rawlins's second trial.

As the United States Court of Appeals for the Third Circuit, while sitting in its former capacity as the *de facto* court of last resort for the Virgin Islands,[10] noted over 50 years ago:

> As the increasing popularity of the Virgin Islands as a vacation resort attests, travel over long distances is relatively swift and easy today. We may not exclude the important evidence of demeanor without realistically taking into consideration the opportunity which air travel now affords for bringing witnesses from long distances into the Virgin Islands to testify. The new procedures under the Uniform Act . . . make possible the compulsory attendance of witnesses who are outside the jurisdiction. The reasonableness of efforts to secure attendance in the Virgin Islands of a witness, whether he is in another state of the Union or in a foreign country, must be judged by the standards of modern air travel and not of the sailing vessel or even the steamship. Where the liberty of a defendant is at stake the government which prosecutes him may not secure the benefit of incriminating testimony against him unless it shows [a] genuine and bona fide effort to secure the attendance of the witness. An effort which expires at the shoreline of the Virgin Islands cannot be said to have inherently in it the proof of its genuineness and its bona fide character.

*Aquino*, 378 F.2d at 551-52. Indeed, "[t]he right of confrontation may not be dispensed with so lightly." *Barber*, 390 U.S. at 724. Accordingly, the Superior Court erred when it permitted the People to read J.J.'s and Melendez's transcript testimony into the record at Rawlins's second trial because the admission of their prior testimony violated Rawlins's right to confront the witnesses against him.

Although we conclude that the Superior Court erred in this case, "[t]he erroneous admission of testimonial hearsay in violation of the Confrontation Clause is . . . an error . . . [that] we may affirm if the error

---

[10] The Third Circuit served as the *de facto* court of last resort for the Virgin Islands before this Court commenced operations in 2007. *Garcia v. Garcia*, 59 V.I. 758, 776 (V.I. 2013); *V.I. Narcotics Strike Force v. Pub. Emps. Relations Bd.*, 60 V.I. 204, 211 n.6 (V.I. 2013) ("[T]he Legislature granted the Supreme Court jurisdiction over all appeals from the Superior Court in 2004, which took effect on January 29, 2007.").

was harmless." *Blyden v. People*, 53 V.I. 637, 656 (V.I. 2010). But "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Frett v. People*, 58 V.I. 492, 506 (V.I. 2013); *see also Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). So that if "at the end of our examination, we 'cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the [constitutional] error . . . [we] should not find the error harmless.' " *Fahie v. People*, 59 V.I. 505, 517 (V.I. 2013) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). In reviewing a constitutional error for harmlessness, the burden is on the beneficiary of the error to make a showing that the error was harmless beyond a reasonable doubt. *Frett*, 58 V.I. at 506; *Chapman*, 386 U.S. at 24 ("Certainly error, constitutional error, in illegally admitting highly prejudicial evidence . . . casts on someone other than the person prejudiced by it a burden to show that it was harmless.").

In this case, the People failed to file a brief addressing any of the arguments raised by Rawlins on appeal, including his argument that admitting J.J.'s and Melendez's prior testimony was a violation of the Confrontation Clause. Accordingly, the People has failed to satisfy its burden of showing that the erroneous admission was harmless, and for this reason alone, we cannot hold that the error was harmless beyond a reasonable doubt. *Frett*, 58 V.I. at 507 (the People's failure to address "the critical question" on appeal of whether a constitutional error was harmless beyond a reasonable doubt prevented this Court from holding that the error was harmless). And even had the People attempted to meet this burden, it would have failed. Indeed, the entire prosecution rested on J.J.'s testimony. She was the only witness who was present when the alleged incident took place and, accordingly, she was the only witness who could testify to what happened in the classroom on that day. In this regard, J.J.'s testimony formed the entirety of the incriminating evidence against Rawlins, and it would be inconceivable that the verdict would have been the same without J.J.'s damaging testimony. We also cannot overlook the fact that Rawlins's first trial, where J.J. and Melendez testified in person and the jury had the opportunity to view their demeanor, resulted in a mistrial. Moreover, because of the unique psychological elements inherent in a charge of sexual abuse, we exercise special caution in determining if the erroneous admission of highly prejudicial evidence was

harmless, especially where the victim did not testify at trial. *See Aquino*, 378 F.2d at 548 (in such cases, "[t]he significance of demeanor evidence reaches heightened importance" and the credibility of the witness is "crucial").

And although the People were able to introduce J.J.'s description of the incident through the testimony of Francis, Capdeville, and Dr. Woodson, we note that this evidence was simply a cumulative retelling of J.J.'s story, most of which was not properly admitted at trial. For instance, the Superior Court, over Rawlins's objection, permitted Francis to testify to what J.J. told her happened on that day and admitted her hearsay statements "conditionally" pursuant to the present sense impression and excited utterance hearsay exceptions under Federal Rules of Evidence 803(1) and (2). However, it is not clear how J.J.'s re-telling of the events of that day — several hours after they took place — would fall under either Rule 803(1) or (2), since both exceptions require that the statements be made during the event or immediately after the event took place. *See* FED. R. EVID. 803(1)-(2) advisory committee notes (noting the "substantial contemporaneity of event and statement" that is required under both subsections). In addition, and although Rawlins's attorneys — both at trial and on appeal — inexplicably failed to object to the introduction of the video-recorded interview of J.J. and Capdeville which was played at trial, and later re-watched by the jury during deliberations, the admission of the video interview with J.J. was unquestionably error, both under the rules against hearsay and under the Confrontation Clause. *See United States v. Bordeaux*, 400 F.3d 548, 555-56 (8th Cir. 2005) (statements made to forensic interviewer during a video-recorded interview by alleged victim in child sexual abuse case were testimonial in nature, and thus playing the video at trial was error in violation of both the rules against hearsay and the defendant's Sixth Amendment right of confrontation). In fact, it seems that the only evidence that was arguably admissible in this case may have been Dr. Woodson's notes, admitted under Rule 803(4), which allows the admission of statements made for medical diagnosis or treatment, if the specific statements are "reasonably pertinent to diagnosis or treatment."[11] FED. R. EVID. 803(4). Accordingly, although the People's failure to file a brief in this case — or otherwise

---

[11] In general, a victim's statement to a physician identifying the person responsible for the victim's injuries is not considered necessary for either accurate diagnosis or effective treat-

meet its burden of demonstrating that this error was harmless beyond a reasonable doubt — necessarily prevents a finding of harmlessness, even if we were to evaluate the evidence, we could not find the Superior Court's constitutional error of admitting J.J.'s and Melendez's transcript testimony harmless beyond a reasonable doubt.[12]

## IV. CONCLUSION

The evidence was sufficient to support Rawlins's convictions for first-degree aggravated rape and child abuse. However, the Superior Court committed constitutional error in permitting the People to read the prior testimony of J.J. and Melendez into the record at Rawlins's second trial because the Superior Court erred in finding that they were unavailable for purposes of the Confrontation Clause. Further, this Court cannot hold that this error was harmless since the People failed to file a brief in this case, thus failing to meet its burden of showing that the error was harmless

---

ment, and is not admissible under Rule 803(4). *See United States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993). However, in domestic assault or child abuse cases the result may be different where the person identified is a family member or frequent visitor to the home of the victim. *See id.* (collecting cases); *see also Territory of Guam v. Ignacio*, 10 F.3d 608, 612-13 (9th Cir. 1993). But since this issue was not raised below, or briefed on appeal, we decline to determine whether J.J.'s statements to Dr. Woodson were properly admitted under Rule 803(4). V.I.S.CT.R. 22(m).

[12] Rawlins also argues that his right to due process under the Fifth Amendment was violated when the jury was impermissibly made aware that he invoked his right to remain silent during an investigative interview with Detective George. While it is true that a defendant's post-*Miranda* silence cannot later be used as substantive evidence of guilt, *see Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986), there is nothing in Detective George's testimony — or elsewhere in the record — to indicate that the jury was ever informed of Rawlins's invocation of his right to remain silent. Moreover, Detective George's report, which was provided to the jury as People's Exhibit 24, was redacted to remove any mention of Rawlins's invocation. Accordingly, there is no merit to Rawlins's argument that his post-*Miranda* silence was ever used against him in this case. We also note that although Rawlins suggested on appeal that Detective George's report "may not have been properly redacted to exclude" his invocation of his right to remain silent, Rawlins failed to include the version of Detective George's report that was actually presented to the jury, requiring this Court to obtain the exhibit from the Clerk of the Superior Court pursuant to Supreme Court Rule 11(c). *See* V.I.S.CT.R. 24(a) (requiring appellants before this Court to include in the Joint Appendix any "relevant portions of the trial transcripts, exhibit or other parts of the record referred to in the briefs"); *see also Frett*, 59 V.I. at 497 n.4 (appellant's failure to include in the Joint Appendix the statement he argued was unconstitutionally admitted could have jeopardized his appeal).

beyond a reasonable doubt. Therefore, we vacate the Superior Court's January 16, 2014 judgment and remand for a new trial.[13]

---

[13] Although we vacate the judgment on other grounds, because it is likely to recur on remand, we note that the Superior Court sentenced Rawlins to 22 years for first-degree aggravated rape and subsequently stayed his sentence for child abuse under 14 V.I.C. § 104 without first announcing a sentence for that count. As this Court has consistently held, section 104 "requires that the Superior Court . . . announce a sentence for [each] offense" and then "stay execution of the sentences in which section 104 is implicated." *Williams v. People*, 58 V.I. 341, 354 n.10 (V.I. 2013).